# YOUNG ET UX. *v.* UNITED STATES

No. 00–1567.   Argued January 9, 2002—Decided March 4, 2002

*Grenville Clark III* argued the cause and filed briefs for petitioners.

*Patricia A. Millett* argued the cause for the United States. With her on the briefs were *Solicitor General Olson, Assistant Attorney General O'Connor, Deputy Solicitor General Wallace, Bruce R. Ellisen,* and *Thomas J. Sawyer.*

JUSTICE SCALIA delivered the opinion of the Court.

A discharge under the Bankruptcy Code does not extinguish certain tax liabilities for which a return was due within three years before the filing of an individual debtor's petition. 11 U. S. C. §§ 523(a)(1)(A), 507(a)(8)(A)(i). We must decide whether this "three-year lookback period" is tolled during the pendency of a prior bankruptcy petition.

## I

Petitioners Cornelius and Suzanne Young failed to include payment with their 1992 income tax return, due and filed on

October 15, 1993 (petitioners had obtained an extension of the April 15 deadline). About $15,000 was owing. The Internal Revenue Service (IRS) assessed the tax liability on January 3, 1994, and petitioners made modest monthly payments ($40 to $300) from April 1994 until November 1995. On May 1, 1996, they sought protection under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Hampshire. The bulk of their tax liability (about $13,000, including accrued interest) remained due. Before a reorganization plan was confirmed, however, the Youngs moved on October 23, 1996, to dismiss their Chapter 13 petition, pursuant to 11 U. S. C. § 1307(b). On March 12, 1997, one day before the Bankruptcy Court dismissed their Chapter 13 petition, the Youngs filed a new petition, this time under Chapter 7. This was a "no asset" petition, meaning that the Youngs had no assets available to satisfy unsecured creditors, including the IRS. A discharge was granted June 17, 1997; the case was closed September 22, 1997.

The IRS subsequently demanded payment of the 1992 tax debt. The Youngs refused and petitioned the Bankruptcy Court to reopen their Chapter 7 case and declare the debt discharged. In their view, the debt fell outside the Bankruptcy Code's "three-year lookback period," §§ 523(a)(1)(A), 507(a)(8)(A)(i), and had therefore been discharged, because it pertained to a tax return due on October 15, 1993, more than three years before their Chapter 7 filing on March 12, 1997. The Bankruptcy Court reopened the case but sided with the IRS. Although the Youngs' 1992 income tax return was due more than three years before they filed their Chapter 7 petition, it was due less than three years before they filed their Chapter 13 petition on May 1, 1996. Holding that the "three-year lookback period" is tolled during the pendency of a prior bankruptcy petition, the Bankruptcy Court concluded that the 1992 tax debt had not been discharged. The District Court for the District of New Hampshire and Court

of Appeals for the First Circuit agreed. 233 F. 3d 56 (2000). We granted certiorari. 533 U. S. 976 (2001).

## II

Section 523(a) of the Bankruptcy Code excepts certain individual debts from discharge, including any tax "of the kind and for the periods specified in section . . . 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed." §523(a)(1)(A). Section 507(a), in turn, describes the priority of certain claims in the distribution of the debtor's assets. Subsection 507(a)(8)(A)(i) gives eighth priority to "allowed unsecured claims of governmental units, only to the extent that such claims are for— . . . a tax on or measured by income or gross receipts— . . . *for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition . . . .*" (Emphasis added.) This is commonly known as the "three-year lookback period." If the IRS has a claim for taxes for which the return was due within three years before the bankruptcy petition was filed, the claim enjoys eighth priority under §507(a)(8)(A)(i) and is nondischargeable in bankruptcy under §523(a)(1)(A).

The terms of the lookback period appear to create a loophole: Since the Code does not prohibit back-to-back Chapter 13 and Chapter 7 filings (as long as the debtor did not receive a discharge under Chapter 13, see §§727(a)(8), (9)), a debtor can render a tax debt dischargeable by first filing a Chapter 13 petition, then voluntarily dismissing the petition when the lookback period for the debt has lapsed, and finally refiling under Chapter 7. During the pendency of the Chapter 13 petition, the automatic stay of §362(a) will prevent the IRS from taking steps to collect the unpaid taxes, and if the Chapter 7 petition is filed after the lookback period has expired, the taxes remaining due will be dischargeable. Peti-

tioners took advantage of this loophole, which, they believe, is permitted by the Bankruptcy Code.

We disagree. The three-year lookback period is a limitations period subject to traditional principles of equitable tolling. Since nothing in the Bankruptcy Code precludes equitable tolling of the lookback period, we believe the courts below properly excluded from the three-year limitation the period during which the Youngs' Chapter 13 petition was pending.

## A

The lookback period is a limitations period because it prescribes a period within which certain rights (namely, priority and nondischargeability in bankruptcy) may be enforced. 1 H. Wood, Limitations of Actions § 1, p. 1 (4th D. Moore ed. 1916). Old tax claims—those pertaining to returns due more than three years before the debtor filed the bankruptcy petition—become dischargeable, so that a bankruptcy decree will relieve the debtor of the obligation to pay. The period thus encourages the IRS to protect its rights—by, say, collecting the debt, 26 U. S. C. §§ 6501, 6502 (1994 ed. and Supp. V), or perfecting a tax lien, §§ 6322, 6323(a), (f) (1994 ed.)—before three years have elapsed. If the IRS sleeps on its rights, its claim loses priority and the debt becomes dischargeable. Thus, as petitioners concede, the lookback period serves the same "basic policies [furthered by] all limitations provisions: repose, elimination of stale claims, and certainty about a plaintiff's opportunity for recovery and a defendant's potential liabilities." · *Rotella* v. *Wood*, 528 U. S. 549, 555 (2000). It is true that, unlike most statutes of limitations, the lookback period bars only *some*, and not *all*, legal remedies[1] for enforcing the claim (viz., priority and

---

[1] Equitable remedies may still be available. Traditionally, for example, a mortgagee could sue in equity to foreclose mortgaged property even though the underlying debt was time barred. *Hardin* v. *Boyd*, 113 U. S. 756, 765–766 (1885); 2 G. Glenn, Mortgages §§ 141–142, pp. 812–818 (1943); see also *Beach* v. *Ocwen Fed. Bank*, 523 U. S. 410, 415–416 (1998) (recoup-

nondischargeability in bankruptcy); that makes it a more limited statute of limitations, but a statute of limitations nonetheless.

Petitioners argue that the lookback period is a substantive component of the Bankruptcy Code, not a procedural limitations period. The lookback period commences on the date the return for the tax debt "is last due," § 507(a)(8)(A)(i), not on the date the IRS discovers or assesses the unpaid tax. Thus, the IRS may have less than three years to protect itself against the risk that a debt will become dischargeable in bankruptcy.

To illustrate, petitioners offer the following variation on this case: Suppose the Youngs filed their 1992 tax return on October 15, 1993, but had not received (as they received here) an extension of the April 15, 1993, due date. Assume the remaining facts of the case are unchanged: The IRS assessed the tax on January 3, 1994; petitioners filed a Chapter 13 petition on May 1, 1996; that petition was voluntarily dismissed and the Youngs filed a new petition under Chapter 7 on March 12, 1997. In this hypothetical, petitioners argue, their tax debt would have been dischargeable in the *first* petition under Chapter 13. Over three years would have elapsed between the due date of their return (April 15, 1993) and their Chapter 13 petition (May 1, 1996). But the IRS— which may not have discovered the debt until petitioners filed a return on October 15, 1993—would have enjoyed less than three years to collect the debt or prevent the debt from becoming dischargeable in bankruptcy (by perfecting a tax lien). The Code even contemplates this possibility, petitioners believe. Section 523(a)(1)(B)(ii) renders a tax debt nondischargeable if it arises from an untimely return filed within *two years* before a bankruptcy petition. Thus, if petitioners had filed their return on April 30, 1994 (more than two years before their Chapter 13 petition), and if the IRS had been

ment is available after a limitations period has lapsed); *United States* v. *Dalm,* 494 U. S. 596, 611 (1990) (same).

unaware of the debt until the return was filed, the IRS would have had only *two years* to act before the debt became dischargeable in bankruptcy. For these reasons, petitioners believe the lookback period is not a limitations period, but rather a *definition* of dischargeable taxes.

We disagree. In the sense in which petitioners use the term, *all* limitations periods are "substantive": They *define* a subset of claims eligible for certain remedies. And the lookback is not distinctively "substantive" merely because it commences on a date that may precede the date when the IRS discovers its claim. There is nothing unusual about a statute of limitations that commences when the claimant has a complete and present cause of action, whether or not he is aware of it. See 1 C. Corman, Limitation of Actions §6.1, pp. 370, 378 (1991); 2 Wood, *supra*, §276c(1), at 1411. As for petitioners' reliance on §523(a)(1)(B)(ii), that section proves, at most, that Congress put different limitations periods on different kinds of tax debts. All tax debts falling within the terms of the three-year lookback period are nondischargeable in bankruptcy. §§523(a)(1)(A), 507(a)(8)(A)(i). Even if a tax debt falls outside the terms of the lookback period, it is nonetheless nondischargeable if it pertains to an untimely return filed within two years before the bankruptcy petition. §523(a)(1)(B)(ii). These provisions are complementary; they do not suggest that the lookback period is something other than a limitations period.

B

It is hornbook law that limitations periods are "customarily subject to 'equitable tolling,'" *Irwin* v. *Department of Veterans Affairs*, 498 U. S. 89, 95 (1990), unless tolling would be "inconsistent with the text of the relevant statute," *United States* v. *Beggerly*, 524 U. S. 38, 48 (1998). See also *American Pipe & Constr. Co.* v. *Utah*, 414 U. S. 538, 558–559 (1974); *Holmberg* v. *Armbrecht*, 327 U. S. 392, 397 (1946); *Bailey* v. *Glover*, 21 Wall. 342, 349–350 (1875). Congress must be presumed to draft limitations periods in light of this back-

ground principle. Cf. *National Private Truck Council, Inc.*
v. *Oklahoma Tax Comm'n*, 515 U. S. 582, 589–590 (1995);
*United States* v. *Shabani*, 513 U. S. 10, 13 (1994). That is
doubly true when it is enacting limitations periods to be ap-
plied by bankruptcy courts, which are courts of equity and
"appl[y] the principles and rules of equity jurisprudence."
*Pepper* v. *Litton*, 308 U. S. 295, 304 (1939); see also *United
States* v. *Energy Resources Co.*, 495 U. S. 545, 549 (1990).

This Court has permitted equitable tolling in situations
"where the claimant has actively pursued his judicial reme-
dies by filing a defective pleading during the statutory pe-
riod, or where the complainant has been induced or tricked
by his adversary's misconduct into allowing the filing dead-
line to pass." *Irwin, supra*, at 96 (footnotes omitted). We
have acknowledged, however, that tolling might be appro-
priate in other cases, see, *e. g., Baldwin County Welcome
Center* v. *Brown*, 466 U. S. 147, 151 (1984) *(per curiam)*, and
this, we believe, is one. Cf. *Amy* v. *Watertown (No. 2)*, 130
U. S. 320, 325–326 (1889); 3 J. Story, Equity Jurisprudence
§ 1974, pp. 558–559 (14th W. Lyon ed. 1918). The Youngs'
Chapter 13 petition erected an automatic stay under § 362,
which prevented the IRS from taking steps to protect its
claim. When the Youngs filed a petition under Chapter 7,
the three-year lookback period therefore excluded time dur-
ing which their Chapter 13 petition was pending. The
Youngs' 1992 tax return was due within that three-year pe-
riod. Hence the lower courts properly held that the tax
debt was not discharged when the Youngs were granted a
discharge under Chapter 7.

Tolling is in our view appropriate regardless of petitioners'
intentions when filing back-to-back Chapter 13 and Chapter
7 petitions—whether the Chapter 13 petition was filed in
good faith or solely to run down the lookback period. In
either case, the IRS was disabled from protecting its claim
during the pendency of the Chapter 13 petition, and this pe-

riod of disability tolled the three-year lookback period when the Youngs filed their Chapter 7 petition.

## C

Petitioners invoke several statutory provisions which they claim display an intent to preclude tolling here. First they point to § 523(b), which, they believe, explicitly permits discharge in a Chapter 7 proceeding of certain debts that were nondischargeable (as this tax debt was) in a prior Chapter 13 proceeding. Petitioners misread the provision. Section 523(b) declares that

> "a debt that was *excepted from discharge* under subsection (a)(1), (a)(3), or (a)(8) of this section . . . in a prior case concerning the debtor . . . is dischargeable in a case under this title unless, by the terms of subsection (a) of this section, such debt is not dischargeable in the case under this title." (Emphasis added.)

The phrase "excepted from discharge" in this provision is not synonymous (as petitioners would have it) with "nondischargeable." It envisions a prior bankruptcy proceeding that progressed *to the discharge stage*, from which discharge a particular debt was actually "excepted." It thus has no application to the present case; and even if it did, the very same arguments in favor of tolling that we have found persuasive with regard to § 507 would apply to § 523 as well. One might perhaps have expected an explicit tolling provision in § 523(b) if that subsection applied *only* to those debts "excepted from discharge" in the earlier proceeding that were subject to the three-year lookback—but in fact it also applies to excepted debts (see § 523(a)(3)) that were subject to no limitations period. And even the need for tolling as to debts that *were* subject to the three-year lookback is minimal, since a separate provision of the Code, § 727(a)(9), constrains successive discharges under Chapters 13 and 7: Generally speaking, six years must elapse between filing of the

two bankruptcy petitions, which would make the need for tolling of the three-year limitation nonexistent. The absence of an explicit tolling provision in § 523 therefore suggests nothing.

Petitioners point to two provisions of the Code, which, in their view, do contain a tolling provision. Its presence there, and its absence in § 507, they argue, displays an intent to preclude equitable tolling of the lookback period. We disagree. Petitioners point first to § 108(c), which reads:

> "Except as provided in section 524 of this title, if applicable nonbankruptcy law . . . fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor . . . , and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) 30 days after notice of the termination or expiration of the stay . . . with respect to such claim."

Petitioners believe § 108(c)(1) contains a tolling provision. The lower courts have split over this issue, compare, *e. g.*, *Rogers* v. *Corrosion Products, Inc.*, 42 F. 3d 292, 297 (CA5), cert. denied, 515 U. S. 1160 (1995), with *Garbe Iron Works, Inc.* v. *Priester*, 99 Ill. 2d 84, 457 N. E. 2d 422 (1983); we need not resolve it here. Even assuming petitioners are correct, we would draw no negative inference from the presence of an express tolling provision in § 108(c)(1) and the absence of one in § 507. It would be quite reasonable for Congress to instruct *nonbankruptcy* courts (including state courts) to toll *nonbankruptcy* limitations periods (including state-law limitations periods) while, at the same time, assuming that bankruptcy courts will use their inherent equitable powers to toll the federal limitations periods within the Code.

Finally, petitioners point to a tolling provision in § 507(a)(8)(A), the same subsection that sets forth the three-year lookback period. Subsection 507(a)(8)(A) grants eighth priority to tax claims pertaining to returns that were *due* within the three-year lookback period, § 507(a)(8)(A)(i), and to claims that were *assessed* within 240 days before the debtor's bankruptcy petition, § 507(a)(8)(A)(ii). Whereas the three-year lookback period contains no express tolling provision, the 240-day lookback period is tolled "any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending." § 507(a)(8)(A)(ii). Petitioners believe this express tolling provision, appearing in the same subsection as the three-year lookback period, demonstrates a statutory intent *not* to toll the three-year lookback period.

If anything, § 507(a)(8)(A)(ii) demonstrates that the Bankruptcy Code *incorporates* traditional equitable principles. An "offer in compromise" is a settlement offer submitted by a debtor. When § 507(a)(8)(A)(ii) was enacted, it was IRS practice—though no statutory provision required it—to stay collection efforts (if the Government's interests would not be jeopardized) during the pendency of an "offer in compromise," 26 CFR § 301.7122–1(d)(2) (1978); M. Saltzman, IRS Practice and Procedure ¶ 15.07[1], p. 15–47 (1981).[2] Thus, a court would not have equitably tolled the 240-day lookback period during the pendency of an "offer in compromise," since tolling is inappropriate when a claimant has voluntarily chosen not to protect his rights within the limitations period. See, *e. g.*, *Irwin*, 498 U. S., at 96. Hence the tolling provision in § 507(a)(8)(A)(ii) *supplements* rather than displaces principles of equitable tolling.

---

[2] The Code was amended in 1998 to prohibit collection efforts during the pendency of an offer in compromise. See 26 U. S. C. § 6331(k) (1994 ed., Supp. V).

*     *     *

We conclude that the lookback period of 11 U. S. C. § 507(a)(8)(A)(i) is tolled during the pendency of a prior bankruptcy petition. The judgment of the Court of Appeals for the First Circuit is affirmed.

*It is so ordered.*