In re Angelito Bagasan TECSON, and Elena Villanueva Tecson, a/k/a Ellena Villanueva, Debtors.

No. 01–09728–3P1.

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

March 31, 2003.

Keith H. Johnson, Jacksonville, FL, for debtors.

Roberta Kohn, Tampa, FL, Bruce T. Russell, Washington, DC, for creditors.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON DEBTORS' OBJECTION TO CLAIM NINE (9)

GEORGE L. PROCTOR, Bankruptcy Judge.

This Case is before the Court on Debtors' Objection to Claim Nine (9). The parties waived oral argument and an evidentiary hearing. After reviewing the pleadings, the Stipulation of Facts, exhibits, and Memoranda of Law, the Court

makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. The Debtors were criminally prosecuted and convicted for tax evasion for taxable years 1990, 1991 and 1992.

2. Criminal Judgments were entered against the Debtors on July 31, 1998.

3. The Debtors entered into a Payment Agreement dated May 21, 1999.

4. The amount of the restitution required in the Judgments was $75, 402.

5. The Debtors paid the $75,402 as required in the Judgments, and an Amended Satisfaction of Judgment dated January 18, 2000, was entered.

6. The Debtors were ordered to pay the restitution jointly and severally, but the Judgments did not direct how the IRS was to allocate the restitution payments to the Debtors' income tax liabilities with respect to the 1990, 1991 and 1992 tax years.

7. On June 8, 2000, the IRS issued a statutory notice of deficiency to the Debtors for tax years 1990, 1991 and 1992.

8. The statutory notice of deficiency provided the Debtors with a 90–day period in which to file a petition to challenge the tax deficiency in the United States Tax Court. The 90–day period expired on September 6, 2000.

9. On November 13, 2000, the Debtors filed a petition with the United States Tax Court.

10. On February 9, 2001 the United States Tax Court dismissed the petition for lack of jurisdiction.

11. Debtors filed a Chapter 11 Bankruptcy Petition on October 18, 2001.

12. On October 30, 2001 the additional assessments for tax years 1990, 1991, and 1992 were made based on the statutory notice of deficiency.

13. The certified copy of Official Record dated September 16, 2002 shows that $70,607.57 was received by the Internal Revenue Service and applied to the Debtors' 1990 joint federal income tax liability.

### CONCLUSIONS OF LAW

The Debtors' Objection to Claim Nine (9) raises two issues for this Courts determination. The first issue is whether the Internal Revenue Service properly credited the Debtors' criminal restitution payments to the 1990 tax year instead of allocating the payments across tax years 1990,1991 and 1992. The second issue is whether the majority of Debtors' unsecured claim should be classified as a priority claim. This classification is dependent upon whether the 240–day priority period of 11 U.S.C. § 507(a)(8)(ii) was tolled by the Debtors' intervening Tax Court case.

### I. Allocation of Debtors' Restitution Payments

■ Voluntary payments of tax debt will typically be applied in the manner the taxpayer has designated. However, in cases where no valid designation is made or if the payment is made involuntarily, the payments will be allocated "in a manner serving the best interest of the IRS." Rev. Proc.2002–26, 2002–15 I.R.B. 746, 2002 WL 545245 (IRS RPR). *See also Liddon v. United States,* 448 F.2d 509, 513 (5th Cir.1971), *see also Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all decisions of former Fifth Circuit handed down prior to October 1, 1981). Designated payments are defined as instances where the taxpayer has directed or identified how the funds are to be applied. I.R.M. 5.1.2.4. Undesignated payments are defined as instances where the taxpayer has given no direction as to how the funds are to be applied. I.R.M. 5.1.2.4. Therefore, the IRS asserts that in the absence of judicial direction or valid taxpayer designation, it is not required to

post restitution payments to specific tax liabilities.

■ The definition of an involuntary payment was established in *Amos v. Comm'r*, 47 T.C. 65, 69, 1966 WL 1102 (1966). In *Amos*, the Tax Court stated "any payment received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor." *Id.; A & B Heating and Air Conditioning*, 823 F.2d 462 (11th Cir.1987).

■ The IRS asserts that nothing in the Judgment entered against the Debtors required their restitution payments be allocated to a particular liability or tax year. Therefore, the IRS argues that since it is permitted to apply undesignated payments in its best interest that it followed its established procedures in applying the Debtors' restitution payments to the earliest period of the their liability. Rev. Proc. 2002–26, 2002–15 I.R.B. 746, 2002 WL 545245.

Debtors argue that their restitution payments do not fall squarely within the categories of voluntary or involuntary. Further, Debtors argue that based upon a prior Supreme Court decision, this Court has the inherent authority to direct the IRS's application of plan payments among different priority unsecured claims. *United States v. Energy Resources Co.*, 495 U.S. 545, 551, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990). In *Energy Resources*, the Supreme Court held that a bankruptcy court has equitable authority, premised on 11 U.S.C. § § 1123(b)(5) and 105, to allocate payments by a corporation in a Chapter 11 reorganization to the trust fund portion of the corporation's tax liability, as long as the bankruptcy court makes specific findings that such a designation is necessary for the success of reorganization. *Id.*

The IRS argues though that *Energy Resources* can be distinguished from the instant case. *Energy Resources* involved a situation in which the IRS had the ability to collect the full amount of the unpaid tax through the corporate debtor's plan of reorganization. However, in the instant case, the IRS argues the Debtors' efforts to reallocate the taxes from the 1990 liabilities to tax only for 1990,1991 and 1992 would reduce the entire amount the IRS is entitled to collect, since penalties more than three years old are subject to discharge. *In re Burns*, 887 F.2d 1541 (11th Cir.1989). Further, the IRS argues that while the ruling in *Energy Resources* did give bankruptcy courts the authority to modify debtor/creditor relationships, it did not give bankruptcy courts the authority to reallocate prepetition payments already credited to a particular account in order to reduce the amount a creditor would collect under a debtor's plan of reorganization. Finally, the IRS asserts the Debtors have not demonstrated that the success of their reorganization plan is dependent upon the reallocation.

It is this Court's finding that the Debtor's restitution payments were in the nature of involuntary and undesignated payments. Further, this Court finds the instant case can be distinguished from *Energy Resources*, and that even if it could not be distinguished, the Debtors have not shown that the success of their reorganization is dependent upon the reallocation. Thus, the Court holds that the IRS properly applied the restitution payments to the Debtors' benefit against the Debtors' 1990 tax liabilities.

## II. § 507(a)(8)(A)(ii)

■ Section 507 (a)(8)(A)(ii) of the Bankruptcy Code provides the 240 day priority period may only be suspended while an offer in compromise is pending. 11 U.S.C. § 507(a)(8)(A)(ii). Debtors originally asserted in their Objection to Claim Nine (9) that the IRS tax liabilities were

properly classified as general unsecured claims. However, Debtors now argue the 240-day priority period of 11 U.S.C. § 507(a)(8)(ii) was tolled during the period their case was pending in the United States Tax Court, and that the majority of their claim should be classified as a priority tax as opposed to a general unsecured claim. In support of their position, Debtors cite to *Young v. United States,* 535 U.S. 43, 122 S.Ct. 1036, 152 L.Ed.2d 79 (2002).

In *Young,* the Supreme Court held that serial bankruptcy cases could not be used to discharge federal tax liabilities and that the three year lookback period was tolled during the pendency of prior bankruptcy cases filed by the debtors. *Id.* The Debtors in the instant case assert the same analogy applies here. Debtors argue the 240 days was tolled from the time they filed their Tax Court petition to when their case was dismissed for lack of jurisdiction as untimely filed.

However, the IRS asserts that § 507(a)(8)(ii) is very clear in stating that, "a tax...(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition is a priority tax."

Therefore, the IRS argues that the only tolling exception set forth in the statute is for the period during which an offer to compromise is pending. The IRS also asserts the statute does not contemplate tolling when a Tax Court petition is filed merely because the IRS is prevented from collection during the pendency of the case. Finally, the IRS argues that because Congress did not ignore Tax Court proceedings in the Bankruptcy Code--as demonstrated by the automatic stay provisions contained in 11 U.S.C. § 362(a)(8)--it was therefore permitted to include such proceedings as another basis in the statute for tolling.

Tolling the priority period of § 507 in any manner beyond that permitted by § 507 would frustrate congressional intent to limit the IRS collection period. *In re Turner,* 182 B.R. 317 (Bankr.N.D.Ala. 1995). Previously, *In re Macko,* 193 B.R. 72 (Bankr.M.D.Fla.1996) this Court found the Turner opinion persuasive and agreed with its holding. Specifically, this Court stated that the court in *Turner* had "correctly noted that Congress had knowledge of non-bankruptcy tolling provisions, but still chose to allow the IRS only a narrow opportunity to collect taxes in an extended priority period, that is during the pendency of an offer in compromise." *Id.* at 75.

This Court finds the situation in *Young* is not analogous to the instant case and declines to expand upon its holding. To toll the priority period in any way other then what § 507 explicitly provides would frustrate congressional intent.

### III. CONCLUSION

The Court holds that (1) the IRS properly applied the prepetition criminal restitution payments to the 1990 federal income tax liabilities of the Debtors and (2) the majority of Debtors' tax liabilities were properly classified as general unsecured claims. The Court will enter a separate order sustaining in part and denying in part Debtors' Objection to Claim Nine (9).

### ORDER SUSTAINING IN PART AND OVERRULING IN PART DEBTORS' OBJECTION TO CLAIM NINE (9)

This Case is before the Court on Debtors' Objection to Claim Nine (9). Upon Findings of Fact and Conclusions of Law separately entered, it is

ORDERED:

1. Claim Nine (9) is sustained to the extent it objects to the classification

of certain tax liabilities as unsecured priority taxes.

2.  Claim Nine (9) is to be classified as follows: $272,835.65 as an unsecured general claim, and $19,684.66 as an unsecured priority claim.

3.  The amended Proof of Claim is allowed as filed.

4.  Debtors' Objection to Claim Nine (9) is denied to the extent it objects to how the IRS allocated the criminal restitution payments of Debtors' 1990 federal income tax liabilities.