T.C. Memo. 2008-137

UNITED STATES TAX COURT

JOSEPH E. AND CHANTAL M. IMARAH, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19737-05L.                    Filed May 20, 2008.

<u>Brian C. Harpst</u> and <u>Joseph E. Mudd</u>, for petitioners.

<u>Patricia P. Wang</u>, for respondent.


MEMORANDUM OPINION


MARVEL, <u>Judge</u>:  Pursuant to section 6330(d),[1] petitioners
seek review of respondent's determination to proceed with the

_____

    [1] Unless otherwise indicated, all section references are to
the Internal Revenue Code, all Rule references are to the Tax
Court Rules of Practice and Procedure, and all references to
sections and chapters of the Bankruptcy Code are to tit. 11 of
the United States Code.

collection of petitioners' 1995, 1996, 1997, and 1998 Federal

income tax liabilities. After concessions,[2] the issue for

decision is whether petitioners' income tax liabilities for 1996

and 1998 were discharged in bankruptcy.

## Background

The parties submitted this case fully stipulated under Rule

122. The stipulation of facts is incorporated herein by this

reference.

Petitioners resided in California when they filed their

petition.

On November 13, 1996, petitioners filed a petition under

chapter 7 of the Bankruptcy Code (case No. 1).[3] On March 10,

1997, the bankruptcy court entered an order of discharge in case

No. 1. However, case No. 1 remained open until its conversion to

chapter 11, discussed below.

On April 15, 1997, petitioners filed their joint Federal

income tax return for 1996 reflecting tax due of $55,320.

Petitioners did not submit a payment with their return.

Respondent subsequently assessed petitioners' 1996 income tax

---

[2] Petitioners concede that their 1995 liability was not discharged. Respondent concedes that petitioners' income tax liability for 1997 was discharged by the discharge order entered on Sept. 2, 2003.

[3] Petitioners filed all bankruptcy petitions discussed herein with the U.S. Bankruptcy Court for the Central District of California.

liability (including applicable interest and penalties) and sent petitioners a demand for payment of the balance owed.

On July 13, 1997, petitioners filed a petition under chapter 13 of the Bankruptcy Code (case No. 2). On September 4, 1997, the bankruptcy court confirmed petitioners' plan under chapter 13.

On April 15, 1999, petitioners filed their joint Federal income tax return for 1998 reflecting tax due of $89,650.[4] Petitioners paid only $15,000 towards their 1998 tax liability when they filed their return.[5] Respondent subsequently assessed petitioners' 1998 income tax liability (including applicable interest and penalties) and sent petitioners a demand for payment of the balance owed.

On May 24, 1999, petitioners filed a motion to vacate the order of discharge entered in case No. 1 and to convert case No. 1 from chapter 7 to chapter 11. Petitioners argued that because of a change in their financial circumstances, they believed they could carry out a plan of reorganization under chapter 11. On or around that date, petitioners also moved to dismiss case No. 2. On July 8, 1999, the bankruptcy court vacated the order of discharge entered in case No. 1 and converted case No. 1 from

_____

[4] Petitioners were granted an extension to file their 1998 tax return until Oct. 15, 1999.

[5] Petitioners also showed a withholding credit of $1,200 on their 1998 return.

chapter 7 to chapter 11.  On the same date, the bankruptcy court dismissed case No. 2.

On October 13, 2000, pursuant to a motion by the U.S. Trustee, the bankruptcy court converted case No. 1 from chapter 11 back to a case under chapter 7.  On January 22, 2002, the bankruptcy court entered another discharge order in case No. 1.

On May 21, 2003, petitioners again filed a petition under chapter 7 of the Bankruptcy Code (case No. 3).  On September 2, 2003, the bankruptcy court entered an order of discharge in case No. 3.

On September 29, 2004, respondent advised petitioners that their unpaid tax liabilities for the years 1996 and 1998 were not discharged in case No. 3.  On or about October 5, 2004, respondent filed a notice of Federal tax lien with respect to petitioners' 1995 through 1998 unpaid tax liabilities.  On October 12, 2004, respondent issued to petitioners a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320.  Petitioners timely submitted a Form 12153, Request for a Collection Due Process Hearing.

On August 26, 2005, the Internal Revenue Service (IRS) Appeals Office conducted petitioners' section 6320 hearing by phone.  Petitioners asserted that the tax liabilities at issue were discharged by the discharge order entered in case No. 3. The Appeals officer stated that the dischargeability of

petitioners' tax liabilities was not an administrative issue but a legal dispute that had to be decided by a judge in a court of law, not by Appeals.[6]  On September 23, 2005, the Appeals officer issued to petitioners a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 upholding the validity of the notice of Federal tax lien.

On October 21, 2005, petitioners timely filed their petition in this case challenging respondent's determination.  Petitioners argue that the Appeals officer improperly refused to make a determination regarding the dischargeability of their tax liabilities.  Petitioners assert that their 1996 and 1998 tax liabilities were discharged by the discharge order entered in case No. 3 on September 2, 2003, and therefore respondent's lien is improper.

Discussion

I.   Section 6320 Hearing

Section 6321 imposes a lien on all property and property rights of a taxpayer liable for taxes where a demand for the payment of the taxes has been made and the taxpayer fails to pay those taxes.  Section 6320(a) requires the Secretary to send a written notice to the taxpayer of the filing of a notice of lien

---

[6] In a letter dated July 19, 2005, the Appeals officer also informed petitioners that they were unable to dispute their tax liabilities because they were given a prior opportunity to address the dischargeability issue with the bankruptcy court.

and of his right to an administrative hearing on the matter.[7]
Section 6320(b) affords the taxpayer the right to a fair hearing
before an impartial Appeals officer.  Section 6320(c) requires
that the administrative hearing be conducted pursuant to section
6330(c), (d), and (e).  At the hearing, a taxpayer may raise any
relevant issue, including appropriate spousal defenses,
challenges to the appropriateness of the collection action, and
collection alternatives.  Sec. 6330(c)(2)(A).  Taxpayers are
precluded, however, from contesting the existence or amount of
the underlying tax liability unless the taxpayer failed to
receive a notice of deficiency for the tax in question or did not
otherwise have an opportunity to dispute the tax liability.  Sec.
6330(c)(2)(B); see also Sego v. Commissioner, 114 T.C. 604, 609
(2000).

Following a hearing, the Appeals officer is required to
issue a notice of determination regarding the disputed notice of
Federal tax lien.  In making this determination, the Appeals
officer is required to take into consideration:  (1) The

---

[7] Sec. 6323(a) requires the Secretary to file notice of a
lien if it is to be valid against any purchaser, holder of a
security interest, mechanic's lienor, or judgment lien creditor.
Generally, a notice of Federal tax lien is filed with an
appropriate local government entity and gives public notice of
the Federal Government's lien on the taxpayer's property.  See
Lindsay v. Commissioner, T.C. Memo. 2001-285, affd. 56 Fed. Appx.
800 (9th Cir. 2003).  A Notice of Federal Tax Lien Filing and
Your Right to a Hearing Under IRC 6320 is then sent to the
taxpayer.  Id.

verification presented by the Secretary that the requirements of applicable law and administrative procedures have been met, (2) the relevant issues raised by the taxpayer, and (3) whether the proposed collection action appropriately balances the need for efficient collection of taxes with a taxpayer's concerns regarding the intrusiveness of the proposed collection action. Sec. 6330(c)(3). If the taxpayer disagrees with the Appeals officer's determination, the taxpayer has the right to seek judicial review by appealing to this Court. Sec. 6330(d). Where the underlying tax liability is properly at issue, the Court reviews any determination regarding the underlying tax liability de novo. Sego v. Commissioner, supra at 610. The Court reviews all other administrative determinations regarding the proposed collection action for abuse of discretion. Id.

Petitioners' contention that their 1996 and 1998 income tax liabilities were discharged in bankruptcy raises an issue relevant to the appropriateness of the collection action, not petitioners' underlying tax liability. See Swanson v. Commissioner, 121 T.C. 111, 118-119 (2003); Washington v. Commissioner, 120 T.C. 114, 120 n.9 (2003); Richardson v. Commissioner, T.C. Memo. 2003-154. However, the Appeals officer did not consider petitioners' discharge argument during the section 6320 hearing. Instead, the Appeals officer stated that the question of whether petitioners' tax liabilities were

discharged in bankruptcy was a legal dispute to be resolved by a judge in a court of law rather than by the Appeals Office. By electing to defer judgment on whether petitioners' tax liabilities were discharged, the Appeals officer failed to take into consideration a challenge by petitioners to the appropriateness of the collection action. Because the Appeals officer was required to take petitioners' challenge to the appropriateness of the collection action into consideration in making his determination under section 6330(c)(3)(B) and did not, petitioners did not receive a valid section 6320 hearing.

Notwithstanding the Appeals officer's failure to grant petitioners a valid section 6320 hearing, we do not believe that it either is necessary or would be productive to remand this case to respondent's Appeals Office to grant petitioners a proper section 6320 hearing. See Lunsford v. Commissioner, 117 T.C. 183, 189 (2001); Woods v. Commissioner, T.C. Memo. 2006-38. As discussed below, the record demonstrates that petitioners' 1996 and 1998 tax liabilities were discharged in bankruptcy and that respondent's collection action was inappropriate.[8]

---

[8] Respondent does not argue that he has the right to proceed in rem with respect to the 1986 and 1988 liabilities, see Iannone v. Commissioner, 122 T.C. 287, 292-294 (2004); Woods v. Commissioner, T.C. Memo. 2006-38, and the stipulated record contains no evidence to support such an argument.

II.  Jurisdiction To Determine Dischargeability

Before we begin our discussion, we must address whether our jurisdiction under sections 6320 and 6330(d) includes the ability to rule on the dischargeability of petitioners' tax liabilities or, alternatively, whether the issue is more appropriately left to the bankruptcy court.  In Washington v. Commissioner, supra at 120-121, in deciding whether we could rule on the dischargeability of a liability in a lien proceeding brought under section 6330(d)(1), we stated:

> a lien proceeding commenced in the Court under section 6330(d)(1) * * * is closely related to and has everything to do with collection of a taxpayer's unpaid liability for a taxable year.  We must determine in the instant lien proceeding whether respondent may proceed with the collection action * * *.  Whether the * * * [bankruptcy court] discharged petitioners from their respective unpaid tax liabilities for those years is an issue that has a direct bearing on whether respondent may proceed with the lien at issue.  We hold that in the instant lien proceeding commenced under section 6330(d)(1) the Court has jurisdiction to determine whether the * * * [bankruptcy court] discharged petitioners from such unpaid liabilities.  [Fn. ref. omitted.]

Accordingly, we conclude that we have jurisdiction to determine whether the bankruptcy court discharged petitioners from their unpaid tax liabilities for 1996 and 1998.

III. Discharge of Taxes in Chapter 7 Bankruptcy

Entry of a discharge order in a chapter 7 bankruptcy case generally discharges all debts of an individual debtor that arose

before the date of the order for relief.[9]  11 U.S.C. sec. 727(b) (2000).  However, under 11 U.S.C. section 523(a)(1)(A), certain individual debts are excepted from discharge, including any tax "of the kind and for the periods specified in section * * * 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed".  Title 11 U.S.C. section 507(a)(8)(A)(i) describes unsecured claims of the IRS to the extent such claims are for "a tax on or measured by income or gross receipts * * * for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition".[10]  Thus, if the IRS has a claim for taxes for which a return was due within 3 years before the bankruptcy petition was filed (the 3-year lookback period), the claim is not dischargeable in a chapter 7 bankruptcy case under 11 U.S.C. section 523(a)(1)(A).

The 3-year lookback period of Bankruptcy Code section 507(a)(8)(A)(i), however, is a limitations period subject to traditional principles of equitable tolling.  In <u>Young v. United</u>

---

[9] In a voluntary bankruptcy case, 11 U.S.C. sec. 301 provides that the date of the order for relief is the date that the bankruptcy petition is filed.

[10] Tit. 11 U.S.C. sec. 507(a) provides for the priority of certain claims in the distribution of the debtor's estate.  Tit. 11 U.S.C. sec. 507(a)(8) gives eighth priority to unsecured claims of the IRS, including claims for the type of tax discussed above.

States, 535 U.S. 43 (2002), the Supreme Court held that the 3-year lookback period is tolled during the pendency of a prior bankruptcy petition.  In that case the taxpayers initially filed a bankruptcy petition under chapter 13.  Id. at 45.  During the pendency of their chapter 13 case, the automatic stay of 11 U.S.C. section 362(a)[11] prevented the IRS from taking the steps necessary to collect the taxpayers' unpaid tax liabilities.  Id. at 50.  Subsequently, the taxpayers moved the court to dismiss their chapter 13 case;[12] and 1 day before the bankruptcy court granted their motion, the taxpayers filed a new petition under chapter 7.  Id. at 45.  Because the taxpayers' unpaid tax liabilities did not fall within the 3-year lookback period with respect to the newly filed chapter 7 petition, the taxpayers argued that the unpaid taxes were discharged.  Id.  The Supreme Court disagreed and held that because the IRS was precluded from protecting its claim during the pendency of the chapter 13 case, this period of disability tolled the 3-year lookback period when

---

[11] The automatic stay of 11 U.S.C. sec. 362(a) generally prohibits all collection actions against a debtor for any debts that arose before the commencement of the case; i.e., the filing of the bankruptcy petition.

[12] Under 11 U.S.C. sec. 1307(b), the court shall dismiss a case under ch. 13 at the request of the debtor if the case has not been converted under 11 U.S.C. sec. 706, 1112, or 1208.

the taxpayers filed their chapter 7 petition.  Id. at 50-51.
Consequently, the taxpayers' debts were not discharged.  Id. at
54.

Petitioners agree that equitable tolling is applicable in
this case, but they maintain that their 1996 and 1998 tax
liabilities nevertheless fall outside the 3-year lookback period
calculated from May 21, 2003, the date the chapter 7 petition in
case No. 3 was filed.  To assess petitioners' contention, we must
determine the proper date to which the 3-year lookback period
extends for each contested year.  To calculate the correct date,
we must take into account the periods in which prior bankruptcy
petitions prevented respondent from collecting petitioners' 1996
and 1998 tax liabilities.[13]

Petitioners' 1996 tax liability arose[14] after petitioners
filed their petition in case No. 1 but before they filed their
petition in case No. 2.  The 3-year lookback period is thus

_____

[13] The bankruptcy court's decision on July 8, 1999, to
vacate the discharge order in case No. 1 and convert the case
from ch. 7 to ch. 11 does not affect our tolling analysis with
respect to petitioners' 1996 and 1998 tax liabilities because
both claims arose after petitioners filed their ch. 7 petition in
case No. 1.  See infra pp. 17-18.

[14] Under sec. 6151, a taxpayer is required to pay the tax
owed for a given tax year by the due date of his Federal income
tax return for that year, without regard to extension of time to
file.  Petitioners' 1996 tax liability thus arose on Apr. 15,
1997, the date their 1996 tax return was due.  Similarly,
petitioners' 1998 tax liability arose on Apr. 15, 1999, the date
their 1998 return was due, even though they were granted a 6-
month extension of time to file.

tolled by the pendency of case No. 2 because respondent was prohibited from collecting petitioners' 1996 tax liability, a prepetition claim in case No. 2, by virtue of the automatic stay imposed by Bankruptcy Code section 362(a). Adding the tolling period of 1 year, 11 months, and 25 days (July 13, 1997, the date the petition in case No. 2 was filed, to July 8, 1999, the date case No. 2 was dismissed) to the 3-year period preceding May 21, 2003 (the date the petition in case No. 3 was filed), we determine the 3-year look back period extends to May 27, 1998. Because the due date of petitioners' 1996 return, April 15, 1997, falls outside the 3-year lookback period, we conclude that petitioners' 1996 tax liability was discharged in case No. 3.

With regard to petitioners' 1998 tax liability, we need not apply the principle of equitable tolling to determine the date to which the 3-year lookback period extends because petitioners' 1998 tax liability arose after the filing of the petitions in both case No. 1 and case No. 2. Respondent thus was at no time barred by the automatic stay from collecting petitioners' 1998 tax liability. Looking back 3 years from the date the petition in case No. 3 was filed, May 21, 2003, to May 21, 2000, we determine that the due date of petitioners' 1998 return, October 15, 1999 (taking into account extensions of time to file), falls outside the 3-year lookback period. Accordingly, petitioners' 1998 tax liability was discharged.

Respondent asserts that the calculation of petitioners' 3-year lookback period is affected by 11 U.S.C. section 348(d), which provides:

> (d) A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112, 1208, or 1307 of this title * * * shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition.[15]

Respondent argues that Bankruptcy Code section 348(d) requires petitioners' 1996 and 1998 tax liabilities to be treated as prepetition claims with respect to case No. 1 upon the October 13, 2000, conversion of case No. 1 from chapter 11 to chapter 7.[16] According to respondent, petitioners' 1996 and 1998 tax liabilities arose after the order for relief in case No. 1, November 13, 1996 (the date petitioners filed their original chapter 7 petition), but before case No. 1 was converted from chapter 11 back to chapter 7 on October 13, 2000. Thus, even though the 1996 and 1998 liabilities arose after the filing of the petition in case No. 1, respondent contends that 11 U.S.C. section 348(d) mandates that these liabilities be treated as if

---

[15] Tit. 11 U.S.C. sec. 348(d) is an exception to the general rule contained in 11 U.S.C. sec. 348(a), which provides that a conversion of a case from one chapter to another does not effect a change in the date of the filing of the petition or the commencement of the case.

[16] Respondent points out that 11 U.S.C. sec. 348(d) applies specifically to conversions made under 11 U.S.C. sec. 1112. Tit. 11 U.S.C. sec. 1112 authorizes the debtor to convert a case in ch. 11 to another chapter of the Bankruptcy Code.

they were incurred before case No. 1 commenced.  Respondent argues that as a result of the treatment of the 1996 and 1998 liabilities as prepetition claims, the automatic stay operated to bar respondent from collecting petitioners' 1996 and 1998 tax liabilities beginning October 13, 2000, the date case No. 1 was converted from chapter 11 to chapter 7, until January 22, 2002, the date the second discharge order in case No. 1 was entered. Respondent concludes that equitable tolling requires the 3-year lookback period to be tolled during this additional period, making petitioners' 1996 and 1998 tax liabilities nondischargeable.

Respondent's argument is not persuasive.  A similar argument was rejected by the U.S. Bankruptcy Court for the Western District of Texas, San Antonio Division, in In re Morris, 155 Bankr. 422 (Bankr. W.D. Tex. 1993).  In that case the debtors filed a petition for bankruptcy under chapter 7, converted their case to chapter 11, and then converted their case back to chapter 7.  Id. at 423-424.  The debtors incurred debts after the initial filing of their chapter 7 petition but before the conversion of their case to chapter 11.  Id. at 424.  The debtors argued that the incurred debts were dischargeable in their chapter 7 case because 11 U.S.C. section 348(d) required that the debts be treated as if they had arisen immediately before the date of the filing of the original chapter 7 petition.  Id.  While the court

acknowledged that the plain language of 11 U.S.C. section 348(d) may have supported this result, the court found that the debtors' interpretation did not serve the intended purpose of the statute. Id. at 425. The House and Senate reports accompanying the enactment of 11 U.S.C. section 348(d) stated that the section was intended to provide "'for special treatment of claims that arise during chapter 11 or 13 cases before the case is converted to a liquidation case.'" Id. (quoting S. Rept. 95-989, at 48 (1978) and H. Rept. 95-595, at 337 (1977)). The court also cited decisions by other bankruptcy courts that found that 11 U.S.C. section 348(d) was intended "'to give chapter 11 administrative claimants priority over unsecured claims when a case is converted from chapter 11 to chapter 7.'" Id. (quoting White Front Feed & Seed v. State Natl. Bank (In re Ramaker), 117 Bankr. 959, 963 (Bankr. N.D. Iowa 1990)). The court concluded that 11 U.S.C. section 348(d) was inapplicable because the debts arose during the pendency of the initial chapter 7 case, before conversion to chapter 11.[17] Id. Because the debts at issue were not incurred

---

[17] The court in In re Morris, 155 Bankr. 422 (Bankr. W.D. Tex. 1993), also quoted 1 Collier Bankruptcy Manual par. 348.03[2] (Lawrence P. King, et al. eds., 3d ed. 1993) in support of its conclusion:

"[Section 348(d)] applies only with respect to a claim arising in a chapter 11, 12 or 13 case before the case is converted into a chapter 7 case. It does not apply with respect to claims arising in the context of a chapter 7 case which is later converted into a case

(continued...)

in the chapter 11 case, the court determined that treating the debts as prepetition claims did not serve the purpose for which 11 U.S.C. section 348(d) was enacted.  Id.

In the present case the 1996 and 1998 tax liabilities arose after November 13, 1996, the date the chapter 7 petition in case No. 1 was filed and before July 8, 1999, the date case No. 1 was converted to a chapter 11 case.  Under In re Morris, supra, and consistent with the legislative history of 11 U.S.C. section 348(d), the liabilities for 1996 and 1998 cannot be treated as prepetition claims with respect to case No. 1 because these liabilities did not arise during the pendency of the chapter 11 case.  Respondent was not barred from collecting petitioners' 1996 and 1998 tax liabilities following the conversion of case No. 1 back to a chapter 7 case.  Accordingly, we reject respondent's argument regarding the application of 11 U.S.C. section 348(d).

Because we reject respondent's argument with respect to the application of 11 U.S.C. section 348(d), we need not rule on the issue of whether the bankruptcy court's decision to vacate the original order of discharge entered in case No. 1 reinstated the

---

[17](...continued)
under chapter 11, 12, or 13."

automatic stay with respect to that case.[18]  Whether or not the automatic stay in case No. 1 was reinstated is significant only if petitioners' 1996 and 1998 tax liabilities are treated as prepetition claims.  As we discussed above, petitioners' 1996 and 1998 tax liabilities are postpetition claims with respect to case No. 1.  Consequently, even if we held that the court's vacatur of the order of discharge reinstated the automatic stay in case No. 1, the stay would not prohibit respondent from seeking collection from petitioners and thus would have no impact on our equitable tolling analysis.

We conclude that petitioners' 1996 and 1998 tax liabilities fall outside the 3-year lookback period and were discharged by the discharge order entered in case No. 3.  Consequently, we do not sustain respondent's determination to proceed with collection of petitioners' 1996 and 1998 tax liabilities.

---

[18] Under 11 U.S.C. sec. 362(c)(2), the automatic stay continues until the earliest of (1) the time the bankruptcy case is closed, (2) the time the bankruptcy case is dismissed, or (3) if the case is a case under ch. 7 concerning an individual, the time a discharge is granted or denied.  The automatic stay in case No. 1 was thus lifted on Mar. 10, 1997, when the bankruptcy court entered the original order of discharge.  Respondent argues, however, that the bankruptcy court's subsequent decision to vacate the original discharge order in case No. 1 reinstated the automatic stay in that case, which remained in effect upon the subsequent conversions of case No. 1 to ch. 11 and back to ch. 7.

We have considered all the other arguments and to the extent not discussed above, conclude those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

<u>An appropriate decision will be entered</u>.