T.C. Memo. 2003-271

UNITED STATES TAX COURT

EDWARD H. AND ANNE G. HARRELL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4063-02L.                    Filed September 17, 2003.

        During the course of R's initial review of Ps'
offer in compromise based upon doubt as to liability
for tax liabilities for 1991, 1992, and 1993, R's
revenue officer communicated with a member of R's
counsel's office.  In a review of R's initial rejection
of Ps' offer in compromise, R's Appeals Officer
Petrohovich communicated with the member of R's
counsel's office who had previously provided advice to
R's revenue officer.  Following the rejection by R's
Appeals Office of Ps' offer in compromise, R issued to
Ps a notice of intent to levy.  In response, Ps filed a
request for a hearing pursuant to sec. 6330, I.R.C.
The requested sec. 6330, I.R.C., hearing was conducted
by Appeals Officer Martin (AO Martin), who had no prior
involvement with the tax and tax periods involved in
the review.  AO Martin determined that collection by
levy was appropriate and issued to Ps a "NOTICE OF
DETERMINATION CONCERNING COLLECTION ACTION(S) UNDER
SECTION 6320 and/or 6330".

Ps filed a petition for judicial review pursuant to sec. 6330, I.R.C., in response to the determination by R to proceed with collection by levy of assessed tax liabilities for 1991, 1992, 1993, and 1999.

Held: AO Martin was an impartial officer at the time she conducted the sec. 6330, I.R.C., hearing because at that time she had had no prior involvement with the unpaid taxes which are the subject of this case. Sec. 6330(b)(3), I.R.C.

Held, further, in light of the intervening decision of the U.S. Supreme Court in Young v. United States, 535 U.S. 43 (2002), this case will be remanded to the Commissioner to permit Ps to reconsider their rejection of AO Martin's suggested installment agreement based in part on Ps' required concession of their 1991-93 tax liabilities, or to offer another collection alternative pursuant to sec. 6330(c)(2)(A)(iii), I.R.C.

Guy C. Crowgey, for petitioners.

Mary Ann Waters, for respondent.

MEMORANDUM OPINION

NIMS, Judge: This case arises from a petition for judicial review filed in response to a "NOTICE OF DETERMINATION CONCERNING COLLECTION ACTION(S) UNDER SECTION 6320 and/or 6330" dated January 22, 2002 (Notice of Determination). The Notice of Determination dealt with petitioners' income tax liabilities for tax years 1991, 1992, 1993, and 1999. The parties agree that the

underlying tax liabilities are no longer in dispute.[1]  The sole issue for decision is whether respondent's decision that formed the basis for the Notice of Determination was an abuse of discretion.  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times.

This case was submitted fully stipulated, and the facts are so found.  The stipulations of the parties, with accompanying exhibits, are incorporated herein by this reference.

## Background

At the time the petition was filed in this case, petitioners resided in Virginia Beach, Virginia.

Petitioner Edward H. Harrell filed for chapter 11 bankruptcy on October 24, 1995.  Petitioner Anne G. Harrell filed for chapter 11 bankruptcy on December 18, 1996.  Petitioners' chapter 11 bankruptcy cases were consolidated on February 27, 1997.  Their consolidated chapter 11 bankruptcy case was dismissed on June 30, 1997.

---

[1]In Young v. United States, 535 U.S. 43 (2002), the Supreme Court resolved the question whether tax liabilities in a posture similar to those of petitioners for tax years 1991-93 could be discharged in a bankruptcy proceeding.  The Supreme Court held that the 3-year lookback period contained in 11 U.S.C. sec. 507(a)(8)(A)(i) (2000) of the Bankruptcy Code is subject to equitable tolling during the pendency of a prior bankruptcy petition.  Following the holding of that case, petitioners no longer argue that their income tax liabilities for tax years 1991-93 were discharged as a result of their bankruptcy proceeding.

On the same day as the dismissal of their chapter 11 bankruptcy case, petitioners filed a petition for chapter 7 bankruptcy relief. Petitioners were granted a discharge in their chapter 7 bankruptcy case on June 11, 1998.

On August 29, 1998, notices of Federal tax lien were filed for petitioners' income tax liabilities for tax years 1991, 1992, and 1993.

On or about October 30, 1998, the Internal Revenue Service (IRS) received from petitioners: (1) A request for an installment agreement (Request for an Installment Agreement), (2) financial statements, and (3) an offer in compromise (Offer in Compromise).

The Request for an Installment Agreement covered: (a) Income tax liabilities for tax years 1994, 1995, 1996, and 1997; and (b) Form 940, Employer's Annual Federal Unemployment Tax Return, and Form 941, Employer's Quarterly Federal Tax Return, tax liabilities for tax periods ended March 31, June 30, September 30, December 31, 1994, March 31, June 30, September 30, December 31, 1995, March 31, June 30, and December 31, 1996.

The Offer in Compromise was based on "doubt as to liability" and covered: (a) Income tax liabilities for tax years 1991, 1992, and 1993; and (b) the Trust Fund Recovery Penalty, see section 6672, for tax periods ended December 31, 1993, March 31, and June 30, 1994. As grounds for the Offer in Compromise,

petitioners alleged that their income tax liabilities for tax years 1991, 1992, and 1993 were discharged as a result of their chapter 7 bankruptcy proceeding.

There followed an extended series of communications, some among various IRS employees themselves, and others between some of the same IRS employees and petitioners' representative, Guy C. Crowgey (Mr. Crowgey). These are summarized as follows.

Revenue Officer Carol Sewel (RO Sewel) spoke with Deborah Stanley, an attorney in respondent's counsel's office, (RC Stanley) for an interpretation of the meaning of the term "court-ordered payments" as that term applied to the necessary living expenses claimed by petitioners as part of the Request for an Installment Agreement.

RO Sewel spoke with Mr. Crowgey regarding the advice she received from RC Stanley. Mr. Crowgey disagreed with the substance of that advice. Mr. Crowgey spoke with RC Stanley regarding the necessary living expenses claimed by petitioners.

On February 1, 1999, Mr. Crowgey wrote to Chief of Collection, Mark Rocawich, requesting that the Request for an Installment Agreement be reassigned from RO Sewel's group in Virginia Beach.

On February 5, 1999, the Collection Division referred the Offer in Compromise to Linda Hawkins, the Offer Coordinator for respondent's Examination Division in Richmond, Virginia.

On May 24, 1999, Revenue Agent R. Wygand, the revenue agent assigned to review the Offer in Compromise, spoke with Mr. Crowgey, who requested that the Offer in Compromise be reviewed by respondent's counsel's office.

On June 16, 1999, a memorandum written by RC Stanley addressing the merits of the Offer in Compromise was sent to Group Manager Bill Stevens.

On July 12, 1999, respondent issued a letter to petitioners notifying them of their right to appeal respondent's determination that the Offer in Compromise should be rejected.

On August 5, 1999, petitioners filed a protest of the rejection of the Offer in Compromise.

Appeals Officer Barbara Petrohovich (AO Petrohovich) was assigned to review the Offer in Compromise. AO Petrohovich was also assigned to conduct a hearing pursuant to section 6330 regarding certain of petitioners' tax years not here at issue.

Between August 30, 1999, and January 3, 2000, AO Petrohovich discussed the dischargeability of taxes in petitioners' bankruptcy proceeding with RC Stanley approximately three times. AO Petrohovich initiated the communications with RC Stanley, and all the communications occurred in RC Stanley's office, which was in the same suite of offices as the office of AO Petrohovich

during the entire time that AO Petrohovich was assigned to review petitioners' protest of the IRS's rejection of the Offer in Compromise.

On December 15, 1999, AO Petrohovich held a conference with Mr. Crowgey. She informed Mr. Crowgey that she disagreed with him regarding the dischargeability of petitioners' income taxes for tax years 1991, 1992, and 1993.

AO Petrohovich determined that she did not see substantial hazards with regard to respondent's position rejecting the Offer in Compromise. She came to this conclusion based on a review of RC Stanley's June 16, 1999, memorandum to Group Manager Stevens that was contained in the collection file, the discussions with RC Stanley regarding the substance of that memorandum, and her own review of the court cases referenced by Mr. Crowgey.

On January 6, 2000, Mr. Crowgey contacted Appeals Chief George Gretes with regard to the handling of petitioners' case. Mr. Crowgey told Appeals Chief Gretes that it was his belief that RC Stanley was an advocate for the Collection Division and that he wanted someone else in respondent's counsel's office to review this matter.

On February 24, 2000, Appeals Chief Gretes sent a letter to Mr. Crowgey that had been reviewed by AO Petrohovich. Prior to

the issuance of this letter, AO Petrohovich corresponded with Appeals Chief Gretes regarding the contents of the June 16, 1999, memorandum written by RC Stanley.

On September 1, 2000, Appeals Chief Gretes agreed to the rejection of the Offer in Compromise.

On September 5, 2000, AO Petrohovich sent a letter to petitioners, with a copy to Mr. Crowgey, rejecting the Offer in Compromise. The parties stipulated that petitioners did not appeal this determination directly to this Court, or to any other court, since no such appeal was allowed for the IRS's rejection of their Offer in Compromise.

On December 25, 2000, the IRS issued to petitioners a "Final Notice - Notice of Intent to Levy" (Notice of Intent to Levy) with regard to income tax liabilities for tax years 1991, 1992, 1993, and 1999.

On January 23, 2001, petitioners requested a hearing pursuant to section 6330 with respect to the Notice of Intent to Levy.

On January 25, 2001, Mr. Crowgey sent a letter to Appeals Chief Gretes, with a copy to Daniel Black, National Chief, Appeals, requesting that "his entire office recuse itself from this case at this time and this case file either be referred to another regional office or to the national office in Washington, D.C."

On April 13, 2001, petitioners' case with respect to the Notice of Intent to Levy was assigned to Appeals Officer Anne Martin (AO Martin) in respondent's Bailey's Crossroads, Virginia, office.

AO Martin previously worked directly under Appeals Chief Gretes. Appeals Chief Gretes was the Appeals Chief for the Virginia/West Virginia Appeals Office from September 27, 1997, through August 13, 2000. From September 29, 1997, until October 1, 2000, AO Martin was in the chain of command of Appeals Chief Gretes. After October 1, 2000, and at all times during her review of petitioners' case, AO Martin was not in a chain of command that included Appeals Chief Gretes.

AO Martin had no involvement with respect to the underlying tax liabilities at issue in petitioners' case prior to her assignment to the case.

On August 22, 2001, Mr. Crowgey and Acting Area 3 Director of Appeals Brian O'Hanlon discussed the assignment of AO Martin to petitioners' case.

On August 28, 2001, AO Martin sent a letter to Mr. Crowgey confirming a hearing date of September 20, 2001.

On January 22, 2002, respondent issued the Notice of Determination that forms the basis for the instant case. The Notice of Determination dealt with petitioners' income tax liabilities for tax years 1991, 1992, 1993, and 1999. The Notice

of Determination found that collection action by levy was proper

and appropriate.  Attached to the Notice of Determination is a

memorandum that states, in part:

> You feel there was an ex parte communication violation
> by the prior Appeals Officer [AO Petrohovich] who
> handled the offer in compromise and prior * * *
> [section 6330 hearing regarding certain of petitioners'
> tax years not here at issue].
>
> The offer in compromise was rejected on September 5,
> 2000 * * *.  The ex parte rules did not become
> effective until October 23, 2000.
>
> The tax liabilities will not be abated as the
> collection statute was tolled during the period of the
> prior bankruptcy.
>
> *     *     *     *     *     *     *
>
> The notice of intent to levy was appropriate.  You had
> declined to enter into an installment agreement.

### Discussion

I.  General Rules

Section 6331(a) authorizes the Commissioner to levy against

property and property rights where a taxpayer fails to pay taxes

within 10 days after notice and demand for payment is made.

Section 6331(d) requires the Secretary to send notice of an

intent to levy to the taxpayer, and section 6330(a) requires the

Secretary to send a written notice to the taxpayer of his right

to a hearing.

Section 6330(b) affords taxpayers the right to a hearing

before an impartial IRS Appeals officer.  Pursuant to section

6330(b)(2), a taxpayer is entitled to only one hearing regarding the tax period relating to the amount of unpaid tax.

Section 6330(c)(1) requires that the Appeals officer obtain verification that the requirements of any applicable law or administrative procedure have been met.  Section 6330(c)(2)(A) provides that the taxpayer may raise at the hearing "any relevant issue relating to the unpaid tax or the proposed levy" including spousal defenses, challenges to the appropriateness of collection actions, and alternatives to collection.  The taxpayer cannot raise issues relating to the underlying tax liability if the taxpayer received a notice of deficiency for such tax liability or the taxpayer otherwise had an opportunity to dispute the tax liability.  Sec. 6330(c)(2)(B).  Section 6330(c)(3) provides that a determination of the Appeals officer shall take into consideration the verification under section 6330(c)(1), the issues raised by the taxpayer, and whether the proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that any collection action be no more intrusive than necessary.

Where the Appeals Office issues a notice of determination to the taxpayer following an administrative hearing regarding a levy, section 6330(d)(1) provides that the taxpayer will have 30 days following the issuance of the determination to file a petition for review with the Tax Court or a Federal District

Court, as appropriate. The taxpayer may appeal the determination to the Tax Court, rather than a Federal District Court, if the Tax Court generally has jurisdiction over the type of tax involved in the case.  Sec. 6330(d)(1)(A); Downing v. Commissioner, 118 T.C. 22, 26 (2002); Landry v. Commissioner, 116 T.C. 60, 62 (2001).  Section 6330(e)(1) suspends the levy action until the conclusion of the hearing and any judicial review of the determination.

Where the underlying tax liability is properly at issue in the hearing, we review that issue on a de novo basis.  Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).  Where the underlying tax liability is not at issue, however, we review the determination to see whether there has been an abuse of discretion.  Id.  In this case, the parties agree that the underlying tax liabilities are no longer at issue; thus we review respondent's determination under an abuse of discretion standard.

The Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 1001(a)(4), 112 Stat. 689, required that respondent develop a plan to prohibit ex parte communications between officers of the Appeals Office and other IRS employees that appear to compromise the independence of the Appeals Office.

On October 4, 2000, respondent issued Notice 99-50, 1999-2 C.B. 444, which concerned a proposed revenue procedure that, when

finalized, would provide guidance to address, in part, the directive in RRA 1998 to develop a plan to prohibit ex parte communication between officers of the Appeals Office and other IRS employees that appear to compromise the independence of the Appeals Office. Before issuing final guidance, the Treasury Department and the IRS invited comments from the public to aid in the development of this revenue procedure. Notice 99-50, 1999-2 C.B. at 444, states that "The prohibition on ex parte communication will not take effect until the revenue procedure is issued in final form. In the interim, existing procedures relating to communications in the course of Appeals consideration of disputes remain in effect."

The effective date of Rev. Proc. 2000-43, 2000-2 C.B. 404, which deals with ex parte communications between officers of the Appeals Office and other IRS employees, by its terms is October 23, 2000.

## II. Parties' Contentions

Respondent contends that AO Martin was an impartial Appeals officer as that term is used in section 6330(b)(3). Respondent also contends that AO Martin correctly considered

> (1) whether the legal and procedural requirements were met with regard to the Final Notice - Notice of Intent to Levy, (2) whether there were any valid challenges to the liability, and (3) whether the collection action balanced the need for efficient collection of taxes with * * * [petitioners'] legitimate concern that any collection action be no more intrusive than necessary.

Respondent contends that AO Martin considered the merits of all issues raised by petitioners and, through her own research, determined that petitioners' position was without merit. In addition, respondent claims that AO Martin considered petitioners' dischargeability argument. Respondent further claims that petitioners offered no collection alternatives to AO Martin, and when she proposed the collection alternative of an installment agreement encompassing the entire amount of the liabilities, petitioners rejected it. Respondent argues that because "petitioners were given all their due process rights and there has been no showing of an error in judgment or any other abuse of discretion by the Appeals officer assigned to this CDP case [conducted pursuant to section 6330], the determination that the levy action was proper and appropriate should be sustained."

Petitioners contend that AO Martin abused her discretion in determining that "ex parte procedure rules did not apply" to petitioners' previous section 6330 hearing (relating to years not here at issue) and AO Petrohovich's rejection of the Offer in Compromise. Petitioners further contend that

> Appeals Officer Martin has failed to present an adequate record for appellate review, and Appeals Officer Martin lacks impartiality as being a former member of the same office hearing the original collection due process appeal [relating to years not here at issue] and denial of * * * [petitioners'] Offer in Compromise.

Petitioners claim that RC Stanley had extensive involvement with petitioners' case at the collection phase and provided assistance to AO Petrohovich.  Petitioners argue that RC Stanley's communications with AO Petrohovich "jeopardized Appeals Officer Petrohovich's impartiality as a hearing officer, which denied * * * [petitioners] a fair hearing and opportunity to have a meaningful appeal of the denial of the * * * Offer in Compromise."

Petitioners request a new section 6330 hearing with an impartial Appeals officer.

III.  Analysis

As stated above, the parties agree that the underlying liabilities are no longer at issue.  The parties disagree about two main points:  (1) The impartiality of AO Martin, and (2) whether AO Martin abused her discretion in determining that the communications between AO Petrohovich and RC Stanley did not violate petitioners' rights.

A.  Impartiality of Appeals Officer Martin

Section 6330(b)(3) provides:

> (3) Impartial officer.--The hearing under this subsection shall be conducted by an officer or employee who has had no prior involvement with respect to the unpaid tax specified in subsection (a)(3)(A) before the first hearing under this section or section 6320. A taxpayer may waive the requirement of this paragraph.

The operative terms of section 6330(b)(3) provide that "impartial" concerns the Appeals officer's prior involvement with

respect to the unpaid tax before the hearing.  See also Perez v. Commissioner, T.C. Memo. 2002-274.  The statute does not define the meaning of the term "prior involvement"; however, the questions and answers in section 301.6330-1(d)(2), Q&A-D4, Proced. & Admin. Regs., provide that

> Prior involvement by an employee or officer of Appeals includes participation or involvement in an Appeals hearing (other than a CDP hearing held under either section 6320 or section 6330) that the taxpayer may have had with respect to the tax and tax periods shown on the CDP notice.

We agree with respondent that AO Martin was an impartial officer for purposes of section 6330(b)(3).  AO Martin did not participate in, and was not involved in, any previous Appeals Office hearing concerning petitioners' tax years 1991, 1992, 1993, and 1999.

As stated above, AO Martin previously worked in the chain of command of Appeals Chief Gretes.  AO Petrohovich also worked in the chain of command of Appeals Chief Gretes.  When AO Martin conducted her review of petitioners' case, she was no longer in a chain of command that included Appeals Chief Gretes.  We assume, for the sake of argument, that AO Martin and AO Petrohovich were members of the same Appeals Office at some point prior to AO Martin's review of petitioners' case.

Petitioners' contention that AO Martin is not impartial because she is "a former member of the same office hearing * * * [a previous] collection due process appeal and denial of * * *

[petitioners'] Offer in Compromise" is without merit. One Appeals officer's prior involvement with respect to the unpaid tax for a different period, at issue in a previous section 6330 hearing, is not imputed to all other Appeals officers who work in the same Appeals Office as the Appeals officer with such prior involvement. Consequently, AO Martin's status as an impartial officer is not compromised because she worked in the same Appeals Office as AO Petrohovich, who conducted a previous section 6330 hearing regarding certain of petitioner's tax years not here at issue. Similarly, one Appeals officer's prior involvement with respect to the unpaid tax for the same period, at issue in the review of an offer in compromise, is not imputed to all other Appeals officers who work in the same Appeals Office as the Appeals officer with such prior involvement. Consequently, AO Martin's status as an impartial officer is not compromised because she worked in the same Appeals Office as AO Petrohovich, who previously reviewed the Offer in Compromise outside the context of a section 6330 hearing. We conclude that AO Martin was an impartial officer as required by section 6330(b)(3).

B.  Communications Between Respondent's Counsel Stanley and
Appeals Officer Petrohovich[2]

We also agree with respondent that AO Martin did not abuse her discretion in determining that the communications between AO Petrohovich and RC Stanley did not violate petitioners' rights.

RRA 1998 required that respondent develop a plan to prohibit ex parte communications between officers of the Appeals Office and other Internal Revenue Service employees that appear to compromise the independence of the Appeals Office.  Respondent issued Rev. Proc. 2000-43, 2000-2 C.B. 404, to fulfill this statutory mandate.

Petitioners are correct that Rev. Proc. 2000-43, places limits on communications between the Appeals Office and certain employees in the Office of Chief Counsel.  Under the guidance set forth in Rev. Proc. 2000-43, an "ex parte communication" is a communication taking place between the Appeals Office and another Service function without the participation of the taxpayer or the taxpayer's representative.  Rev. Proc. 2000-43, sec. 3, Q&A-D11, 2000-2 C.B. 406, provides that

> Appeals employees should not communicate ex parte
> regarding an issue in a case pending before them with

---

[2]As stated above, AO Petrohovich conducted two separate reviews of petitioners' tax liabilities.  She conducted a sec. 6330 hearing with respect to certain of petitioners' tax years not here at issue.  She also conducted a review of the initial denial of the Offer in Compromise.  Her review of the Offer in Compromise was not conducted pursuant to sec. 6330.

Counsel field attorneys who have previously provided advice on that issue in the case to the IRS employees who made the determination Appeals is reviewing.  * * *

Rev. Proc. 2000-43, sec. 4, 2000-2 C.B. 409, states that it is "effective for communications between Appeals Officers and other Internal Revenue Service employees which take place after October 23, 2000".  The communications between AO Petrohovich and RC Stanley, however, took place before October 23, 2000.

But even if the aforementioned communications had, in fact, taken place after October 23, 2000, such communications would not have disqualified AO Martin's status as an impartial officer under section 6330(b)(3).  The record shows that AO Martin did not engage in impermissible ex parte communications and had no prior involvement with respect to the unpaid taxes that are the subject of this case.

C.  <u>Review Conducted by Appeals Officer Martin</u>

AO Martin independently reviewed the merits of the Offer in Compromise.  Based on her independent review of the facts and applicable law, she concluded that "The tax liabilities will not be abated as the collection statute was tolled during the period of the prior bankruptcy."

We will, however, for reasons hereinafter stated, return this case to the Commissioner solely to provide petitioners with another opportunity to consider AO Martin's proffered collection alternative of an installment agreement of the entire amount of

petitioners' tax liability, including all penalties and interest, or to make an offer of a collection alternative as provided in section 6330(c)(2)(A)(iii). Petitioners will not be permitted to further challenge AO Martin's status as an impartial officer, as defined in section 6330(b)(3), or otherwise, or to raise any new or additional issues.

Our reasons for remanding this case to the Commissioner are as follows:

As previously described, petitioner Edward H. Harrell filed for chapter 11 bankruptcy on October 24, 1995, and petitioner Anne G. Harrell similarly filed on December 18, 1996. Their cases were consolidated on February 27, 1997, and dismissed on June 30, 1997. On the same day as the dismissal of their chapter 11 case, petitioners filed a petition for chapter 7 bankruptcy relief.

Petitioners based their Offer in Compromise for their 1991, 1992, and 1993 tax years on "doubt as to liability", taking the position that their liability for these years was discharged under chapter 7 of the Bankruptcy Code. They theorized that the returns for those years were filed outside the 3-year lookback period contained in the Bankruptcy Code. See 11 U.S.C. sec. 507(a)(8)(A)(i) (2000).

AO Martin, based on her review of the facts and applicable law, including case law, concluded that there was equitable

tolling of the lookback period during the pendency of petitioners' respective and consolidated cases under chapter 11 of the Bankruptcy Code. Consequently, she reasoned, petitioners' 1991, 1992, and 1993 tax liabilities were not discharged under chapter 7 because they fell within the 3-year lookback period.

Furthermore, in suggesting an installment agreement, AO Martin required that if accepted it had to cover petitioners' tax liabilities for all unpaid years, including the challenged 1991, 1992, and 1993 liabilities. As previously noted, petitioners no longer challenge their 1991-93 liabilities.

As of January 22, 2002, the date of the Notice of Determination upon which this case is based, the United States Supreme Court had not as yet decided Young v. United States, 535 U.S. 43 (2002), which had been argued on January 9, 2002, but was not decided until March 4, 2002. In this case, the Supreme Court affirmed the decision of the United States Court of Appeals for the First Circuit in Young v. United States, 233 F.3d 56 (1st Cir. 2000), in which the Court of Appeals held that the 3-year lookback period in bankruptcy cases is automatically tolled during the pendency of an earlier proceeding under the Bankruptcy Code. In Young, 233 F.3d at 60, the Court of Appeals pointed out that five other Courts of Appeals had adopted the rule that the lookback period is automatically tolled during a prior bankruptcy. By contrast, the Court of Appeals noted that three

other Courts of Appeals had held that the lookback period is not automatically tolled by a prior bankruptcy proceeding but that equitable considerations could permit tolling on a case-by-case basis. Id.

We believe that at the time petitioners rejected AO Martin's suggested installment agreement, and at the time the Notice of Determination was issued, there was sufficient reason to raise a doubt as to petitioners' tax liabilities for 1991, 1992, and 1993, so as to justify petitioners' rejection of an installment agreement based in part upon a concession of the 1991-93 liabilities.

The Supreme Court granted certiorari in Young v. United States, 533 U.S. 976 (2001), on September 25, 2001, which predated by more than 3 months respondent's Notice of Determination. If AO Martin's research had revealed the grant of certiorari, prudence might have prompted postponing further action pending the likelihood that the Supreme Court would eventually resolve the equitable tolling issue, and lay to rest the "doubt as to liability" question for purposes of petitioners' Offer in Compromise. Since the Supreme Court resolved the tolling issue only after the above-described crucial events had transpired, we believe that petitioners are entitled to reconsider their rejection of the proposed installment agreement, and if they desire to do so, offer a collection alternative.

While we are reluctant to label respondent's issuance of the Notice of Determination an abuse of discretion based upon a somewhat technical reason for doing so, we hold that it is appropriate to remand this matter to the Commissioner for the sole purpose of permitting petitioners, if they wish to do so, to accept AO Martin's suggested installment agreement, as described above, or to offer another collection alternative pursuant to section 6330(c)(2)(A)(iii).  Again we repeat that petitioners may not further challenge AO Martin's status as an impartial officer, or raise any new or additional issues.

To reflect the foregoing,

An appropriate Order will
be issued.