198 P.3d 539 (2009)
Hector Eduardo Iturribarria PEREZ, Appellant,
v.
Cecilia Bazaldua GARCIA, Respondent.
No. 35527-2-II.
Court of Appeals of Washington, Division 2.
January 6, 2009.
*540 Gary Alan Preble, Attorney at Law, Olympia, WA, for Appellant.
John L. Jarrett, Attorney at Law, Tumwater, WA, for Respondent.
PENOYAR, A.C.J.
¶ 1 Cecila Bazaldua Garcia fled Mexico to Mason County with HI, her son fathered by Hector Eduardo Iturribarria Perez. Iturribarria *541 filed a petition under the Hague Convention for the return of HI, citing wrongful removal from Mexico. A Mason County commissioner ruled that Bazaldua wrongfully removed HI and ordered HI's return to Mexico. Bazaldua filed a motion to revise with the superior court. After nine months and additional fact finding, the court granted the motion and permitted HI to stay in the United States.
¶ 2 Iturribarria appeals, arguing that the trial court impermissibly allowed introduction of evidence not presented to the commissioner and that it improperly decided the merits of the claim. We agree with Iturribarria, hold Mason County LCR 59(5.1), now LCR 59(6.1), invalid, reverse and remand for further proceedings.

FACTS
¶ 3 Iturribarria married Bazaldua on December 30, 1994, in Mexico. They had one child, HI, born April 6, 1995. In late 2003, while living in Mexico City, the couple separated. Bazaldua left the family home with HI.
¶ 4 On January 8, 2004, the parties signed an agreement regarding child custody, child support, and spousal maintenance. The Mexican court approved the agreement and ordered that the parties were bound by the terms "at all times and in all places." Clerk's Papers (CP) at 585. The relevant portions of the agreed order are as follows: (1) Bazaldua was to have the "guard and custody" of HI (at a specific address) "with the understanding that any change of address from the place of residence will be communicated to [Iturribarria] five days before or five days after such change." CP at 583.(2) Both parties were to "maintain the exercise of patria potestas" over HI.[1] CP at 583.(3) Bazaldua "[bound] herself to notify [Iturribarria]" if she removed HI from his school during the 2004-2005 school year. Further, if removed from school during that period, Bazaldua must place HI into a "school with a level similar" to that of the previous one, within Mexico City. CP at 584.
¶ 5 On September 28, 2004, Bazaldua moved from Mexico to Shelton, Washington, with HI. She did not notify Iturribarria that she was leaving with HI, and she did not personally contact him to tell him of the move. On September 30, 2004, Iturribarria learned from several friends that Bazaldua and his son had left Mexico City and received confirmation that same day that HI was no longer at school. The parties dispute when Iturribarria actually learned that Bazaldua and HI were staying with Bazaldua's mother in Shelton.
¶ 6 Iturribarria sought to enforce the custody and maintenance agreement in the Mexican court and filed a lawsuit on October 11, 2004, for HI's return. Frustrated that the Mexican process was taking too long, Iturribarria instituted a process under articles 8 and 9 of the Hague Convention (Convention), which concerns the kidnapping and illegal detention of minors. Iturribarria submitted his application in a Mexican court on April 18, 2005.
¶ 7 On September 28, 2005, Iturribarria filed a petition in Mason County Superior Court to compel HI's return to Mexico under the Convention and United States enabling legislation, the International Child Abduction Remedies Act (ICARA). On October 19, 2005, the United States Central Authority, a department of the United States Department of State, faxed a letter explaining the Hague Convention and other "official history and commentary on the Convention" to both parties' counsel and the court commissioner in Mason County.
¶ 8 At an October 21, 2005 hearing, the commissioner granted Iturribarria's motion requesting HI's return to Mexico, ruling that HI was wrongfully removed. The commissioner ruled that (1) Bazaldua's removal of HI improperly interfered with Iturribarria's right of patria potestas, (2) Bazaldua failed to give the required notice to Iturribarria within five days of the move to Shelton, and (3) Bazaldua failed to keep HI in a school within the geographic confines specified in the Mexican court order. The commissioner also determined that Iturribarria's September 28, 2005 petition was timely because he filed it *542 within one year of the wrongful removal. The commissioner computed the time by reference to CR 6(a), since the Convention and ICARA make no mention of how the computation is to be made. The commissioner ordered that Iturribarria should take physical custody of HI for all purposes necessary to return HI to Mexico. The commissioner also awarded Iturribarria fees in an amount to be determined at a later date.
¶ 9 Bazaldua filed a timely motion to revise the commissioner's order and obtained an ex parte stay pending an order on her motion to revise. The superior court held its first hearing on November 28, 2005. At that time, the superior court sua sponte asked that Iturribarria seek a decision from the Mexican court under articles 3 and 15 of the Convention about whether Bazaldua's removal of HI was wrongful. The superior court noted that it was aware that countries would not always make such requested decisions, and Iturribarria's counsel informed the superior court at that time that the Mexican court system moves very slowly.
¶ 10 Iturribarria made the request of the Mexican court twice. Each time, the Mexican court responded, first in December 2005 and again in February 2006, without decision on the question posed, but instead with the phrase: "Notice Must Be Given." CP at 204, 212. On December 15, 2005, the U.S. Central Authority faxed a letter from the Mexican Central Authority to the Mason County Superior Court, dated December 14, stating that "the Mexican courts are not available to issue a decision or other determination that the removal or retention was wrongful within the meaning of article 3 of the Hague Convention."[2][3] CP at 233-34.
¶ 11 Meanwhile, Bazaldua filed a motion for leave to file new factual material contained in response to the petition and to plead foreign law. This motion included a new declaration from Bazaldua and information regarding Mexican law. The superior court heard argument on August 8, 2006, and granted Bazaldua's motion over objection from Iturribarria. The superior court based its decision to allow new material on Mason County LCR 59(6.1), which states:
The motion for revision shall be heard upon the record before the court commissioner. No new briefs or factual material may be filed without permission of the court for good cause shown.
¶ 12 On August 23, 2006, the superior court made its final ruling, granting Bazaldua's motion to revise, and keeping HI in Shelton with Bazaldua. The superior court ruled that Bazaldua's removal of HI from Mexico was not wrongful and that more than a year had elapsed when Iturribarria filed his petition.
¶ 13 Iturribarria now appeals.

ANALYSIS

I. Motion to Revise
¶ 14 Iturribarria argues that the superior court's decision to modify the commissioner's order was improper because the trial court elicited and relied on new evidence not presented to the commissioner. Bazaldua contends that the trial court properly considered new evidence and that its decision to modify was proper. Iturribarria is correct that in considering a motion to revise, the trial court may not consider evidence not presented to the commissioner. Since the superior court accepted new evidence, we reverse its order and remand.
¶ 15 The superior court has authority to review the records of the case and a commissioner's findings of fact and conclusions of law. Wash. Const. art. IV, § 23; *543 RCW 2.24.050. The superior court's review is not limited to whether the substantial evidence supports the commissioner's finding but is "authorized to determine its own facts based on the record before the commissioner." In re Marriage of Goodell, 130 Wash. App. 381, 388, 122 P.3d 929 (2005) (quoting In re Marriage of Dodd, 120 Wash.App. 638, 644, 86 P.3d 801 (2004)). Our Washington Supreme Court decided in In re Marriage of Moody that a "superior court judge's review of a court commissioner's ruling ... is limited to the evidence and issues presented to the commissioner." 137 Wash.2d 979, 992-93, 976 P.2d 1240 (1999) (emphasis added). Further, if the trial court determines that additional evidence is required, the judge should "remand to the commissioner for further proceedings [as] necessary." Moody, 137 Wash.2d at 992, 976 P.2d 1240.
¶ 16 Bazaldua argues that additional evidence may be considered on review but she cites only to cases decided before Moody and before we agreed with that case in Goodell. Specifically, Bazaldua cites to In re Welfare of Smith, 8 Wash.App. 285, 505 P.2d 1295 (1973), and State v. Espinoza, 112 Wash.2d 819, 824-25, 774 P.2d 1177 (1989). Both cases indicate that the superior court may conduct further proceedings it deems necessary on revision. While the cases Bazaldua cited have not been expressly overruled, their holdings are outdated and contrary to current Washington case law. Moody specifically discusses Smith stating:
We recognize that the Court of Appeals' opinion in In re Welfare of Smith, 8 Wash.App. 285, 505 P.2d 1295 (1973), is somewhat unclear in that it could be interpreted to allow a superior court judge to conduct whatever additional proceedings the judge believed necessary to resolve the case on review. See, e.g., State v. Charlie, 62 Wash.App. 729, 732, 815 P.2d 819 (1991); In re Welfare of McGee, 36 Wash.App. 660, 662, 679 P.2d 933 (1984); Hicks, supra, 32 Gonz. L.Rev. at 42-43. We do not read Smith so broadly. The statute limits review to the record of the case and the findings of fact and conclusions of law entered by the court commissioner. RCW 2.24.050. In an appropriate case, the superior court judge may determine that remand to the commissioner for further proceedings is necessary. Generally, a superior court judge's review of a court commissioner's ruling, pursuant to a motion for revision, is limited to the evidence and issues presented to the commissioner. In cases such as this one, where the evidence before the commissioner did not include live testimony, then the superior court judge's review of the record is de novo.
Moody, 137 Wash.2d at 992-93, 976 P.2d 1240.
¶ 17 Where the commissioner hears live testimony, as in this case, the superior court is to review the commissioner's findings of fact and conclusions of law for substantial evidence. Dodd, 120 Wash.App. at 643, 86 P.3d 801. Where the live testimony does not form a basis or partial basis for the commissioner's decision, the superior court's review of the record is de novo. Moody, 137 Wash.2d at 993, 976 P.2d 1240.
¶ 18 It is clear from the record here that the superior court accepted and reviewed new evidence on the motion to revise. It permitted Bazaldua to introduce a new declaration, introduce information on the meaning of Mexican law, and submit e-mails from a Mexican lawyer. The court did so in reliance on a local court rule but local rules cannot supersede or conflict with state court rules or statutes. Harbor Enters., Inc. v. Gudjonsson, 116 Wash.2d 283, 293, 803 P.2d 798 (1991). Since Mason County LCR 59(6.1) permits the superior court to consider new evidence in violation of RCW 2.24.050 and contrary to relevant case law interpreting that statute, the conflicting portion of the rule is invalid.
¶ 19 Additionally, the superior court improperly sought out new evidence. In seeking a determination from the Mexican court about the possible wrongful removal of HI, the superior court sought information not before the commissioner on the original motion. The superior court also improperly interviewed HI in chambers.
¶ 20 If the superior court determined that more evidence was required, the appropriate *544 action was to remand the case to the commissioner for "further proceedings." Moody, 137 Wash.2d at 992, 976 P.2d 1240. We reverse and remand, instructing the superior court either to reconsider the motion after reviewing only evidence originally presented to the Commissioner or alternatively, to remand to the commissioner if further proceedings are appropriate. We vacate the portion of Mason County LCR 59(6.1) that conflicts with state law.
¶ 21 We address additional issues only because they are likely to arise on remand.

II. Statute of Limitations: "Period of One Year or More"
¶ 22 Under article 12 of the Hague Convention:
Where a child has been wrongfully removed or retained in terms of Article 3 and, at the date of the commencement of the proceedings before the judicial or administrative authority of the Contracting State where the child is, a period of less than one year has elapsed from the date of the wrongful removal or retention, the authority concerned shall order the return of the child forthwith.
The judicial or administrative authority, even where the proceedings have been commenced after the expiration of the period of one year referred to in the proceeding paragraph, shall also order the return of the child, unless it is demonstrated that the child is now settled in its new environment.
CP at 368
¶ 23 The Commissioner interpreted article 12's language under CR 6(a), which states:
In computing any period of time prescribed or allowed by these rules, by the local rules of any superior court, by order of court or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a legal holiday, in which event the period runs until the end of the next day which is neither a Saturday, a Sunday nor a legal holiday.
¶ 24 Following this analysis, the commissioner determined that Iturribarria's Hague Convention petition filed on September 28, 2005, was proper (HI was removed from Mexico on September 28, 2004). Because the filing was timely, and the commissioner found that HI had been wrongfully removed, the commissioner ordered HI's return to Mexico.
¶ 25 On the motion to revise, the superior court rejected the commissioner's use of CR 6(a), determining instead that under Olson v. Civil Service Commission for the Raymond Police Department, 43 Wash.App. 812, 719 P.2d 1343 (1986), CR 6(a) does not apply when looking at a period of months and years. The superior court reversed the commissioner's ruling and found more than one year passed between HI's removal and Iturribarria's filing in Mason County. The superior court then ruled that because Iturribarria filed beyond the one-year deadline, HI's return to Mexico was not automatic under the Hague Convention. Instead, other factors could be taken into account, such as whether HI was settled in the new location, before ordering HI's return on the basis of wrongful removal.
¶ 26 We need not determine whether the commissioner or the superior court correctly computed the time under CR 6(a), however, because here the doctrine of equitable tolling brings Iturribarria's claim within the one-year deadline.
¶ 27 Federal courts have applied the doctrine of equitable tolling where a parent has concealed the removal of their child. Thus, the one year limit under article 12 did not begin until the petitioner, here Iturribarria, confirms the child's new residence. As noted by the 11th Circuit:
We agree with the district court that equitable tolling may apply to ICARA petitions for the return of a child where the parent removing the child has secreted the child from the parent seeking return. See Mendez Lynch v. Mendez Lynch, 220 F.Supp.2d 1347, 1362-63 (M.D.Fla.2002) (holding that equitable tolling applied to *545 ICARA petitions because otherwise "a parent who abducts and conceals children for more than one year will be rewarded for the misconduct by creating eligibility for an affirmative defense not otherwise available")...
Furnes v. Reeves, 362 F.3d 702, 723 (11th Cir.2004).
¶ 28 Additionally, the United States Supreme Court held in Young v. United States that "limitations periods are customarily subject to equitable tolling, unless tolling would be inconsistent with the text of the relevant statute." 535 U.S. 43, 49, 122 S.Ct. 1036, 152 L.Ed.2d 79 (2002) (citations and internal quotation marks omitted).
¶ 29 Bazaldua removed HI from Mexico City without Iturribarria's knowledge. Further, she acknowledged that she never told Iturribarria of HI's removal. In reviewing both the commissioner's and the superior court's rulings, it appears that the earliest Iturribarria could have known of HI's removal and relocation was three days after September 28, 2004. Because Iturribarria was entitled to equitable tolling for at least these three days, he had until October 1, 2005, to submit his petition. He submitted his petition three days earlier, on September 28, 2005, thus, he is within the limitations period set by article 12 of the Hague Convention, and his petition is timely. We reverse the superior court's ruling on this point.

III. Wrongful Removal
¶ 30 To establish a prima facie case of wrongful removal or retention under Article 3 of the Hague Convention, a petitioner must establish, by a preponderance of evidence, that (1) the child was "habitually resident" in Mexico immediately before removal to the United States; (2) the child's removal was in breach of "rights of custody" attributed to Iturribarria, "either jointly or alone," and (3) those rights "were actually exercised at the time of removal or would have been so exercised in the absence of his removal." Antunez-Fernandes v. Connors-Fernandes, 259 F.Supp.2d 800, 810 (N.D.Iowa, 2003). That HI was a habitual resident of Mexico is not in dispute. Because Iturribarria filed his petition within the Convention's deadline, if the court finds the removal wrongful, the Convention requires that the child be "promptly returned unless one of the [four] narrow exceptions set forth in the [Hauge] Convention applies." 42 U.S.C. § 11601(a)(4); Blondin v. Dubois, 189 F.3d 240, 245 (2d Cir.1999).
¶ 31 The four exceptions, contained in articles 12, 13, and 20 of the Hague Convention are: (1) judicial proceedings not being commenced within one year of the child's abduction and the child is well-settled in his or her new home; (2) the petitioning parent was not actually exercising custody rights at the time of the child's removal or had consented to or subsequently acquiesced in the removal or retention; (3) "there is a grave risk that [the child's] return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation"; or (4) returning the child would be inconsistent with "fundamental principles [of the requested State] relating to the protection of human rights and fundamental freedoms." Blondin, 189 F.3d at 245-46. The responding parent bears the burden of proving the latter two exceptions by clear and convincing evidence, and the first two exceptions must be proved by the responding parent by a preponderance of the evidence. 42 U.S.C. § 11603(e)(2)(B); Blondin 189 F.3d at 245-46.
¶ 32 Iturribarria claims that his rights as a parent, as detailed in the custody agreement, were violated when Bazaldua removed HI from Mexico. The commissioner agreed. On Bazaldua's motion to revise, the superior court ruled that her removal of HI was not wrongful. The determinations made by both the commissioner and the superior court on this issue are highly fact specific. Since the superior court committed error by admitting information not presented to the commissioner, its rulings on this issue are reversed. On remand, the trial court will again have before it Iturribarria's claims that Bazaldua violated his "custody rights" under the Mexican order including the provisions for schooling, notice of change of residence, and his rights of patria potestas. The trial court shall promptly address the commissioner's findings on these issues using a "substantial *546 evidence" and not a "de novo" standard of review. If the trial court determines that further evidence should be presented, it shall remand to the commissioner for that purpose.

IV. Violation of the Hague Convention
¶ 33 Iturribarria maintains that the superior court's delay of the hearing on the motion to revise for nearly a year violated the Hague Convention's mandate that contracting countries use "the most expeditious procedures available" in resolving alleged wrongful removal or retention of children. Article 2, Hague Convention. Iturribarria claims that the superior court violated this article by not proceeding to a hearing sooner. Even if this were true, it is unclear what remedy Iturribarria requests. Since we can find none in the text of the Convention, we decline to address this argument further.

IV. Attorney Fees
¶ 34 Iturribarria requests attorney fees. He argues that ICARA requires any court ordering return of a child under a Hague petition to award attorney fees, court costs, and other expenses to the prevailing petitioner. 42 U.S.C. § 11607(b)(3). Iturribarria has substantially prevailed on appeal; however, we have not ordered HI's return under a Hague petition. We remand for further proceedings. A decision on attorney fees awaits the superior court's resolution.
¶ 35 We reverse and remand with instructions to consider Bazaldua's motion to revise based only on the information presented to the commissioner or, if on remand, the superior court finds there to be insufficient evidence upon which to base a decision, it must remand to the commissioner for the collection of additional evidence.
We concur: ARMSTRONG and HUNT, JJ.
NOTES
[1] The true meaning of patria potestas is in dispute.
[2] There is some dispute as to when the superior court received this letter.
[3] Iturribarria's original action for breach of contract in the Mexican court remained pending through the entire Washington process. Iturribarria sought relief from the Mexican court on October 11, 2004; however, Bazaldua was not officially served until May 4, 2006. The method of service of the Mexican show cause order is by means of a carta rogatoria. The Washington equivalent is letters rotary. CR 4(i)(1)(B). Though not officially served until May 4, Iturribarria claims Bazaldua had actual notice of the carta rogatoria from her first appearance in Mason County Superior Court because a copy of the actual untranslated document was filed October 12, 2005, and Bazaldua was given a certified copy at that time.