IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Custody of | ) | |
| | ) | No. 34994-2-III |
| C.R.D.† | ) | |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |

KORSMO, J. — A mother appeals from a contempt order by challenging the terms of an agreement she entered into in order to gain custody of her child from the paternal grandparents. Concluding that she should have sought modification rather than disobey the agreement, we affirm the trial court.

FACTS

R.G., the appellant, is the mother of an eight-year-old daughter, C.D. The child's father is the late B.D., whose parents, M.D. and S.D., are the respondents in this action. R.G. and B.D. never married and both had substance abuse problems that left them

_____

† To protect the privacy interests of C.R.D., a minor, we use his/her and his/her parents' initials throughout this opinion. General Court Order for Court of Appeals, *In re Changes to Case Title*, (Wash. Ct. App. May 25, 2017), http://www.courts.wa.gov /appellate_trial_courts/?fa=atc.genorders_orddisp&ordnumber=2017_002&div=III.

unable to parent C.D. The child spent most of the first five years of her life living with her grandparents, M.D. and S.D.[1]

The death of B.D. led to C.D. receiving approximately $940 per month in Social Security survivor benefits. R.G. eventually sought to gain custody of C.D. Represented by counsel, she negotiated a parenting plan with M.D. and S.D. in November 2014. A guardian ad litem represented C.D.'s interests. Paragraph 3.12.2 of that "Agreed Residential Schedule" (ARS) is at issue in this appeal:

> As it currently stands the payee and overseer of [C.D's] social security benefit left to her by [B.D.] is [S.D.]. [S.D.] is to remain the payee until such time as social security dictates that [R.G.] becomes the payee by virtue of the guardianship/parentage of [C.D.]. . . .
>
> It is the intent of the parties that an educational fund be created for the child. It is also the intent of the parties that mother provide for the basic needs of the child. It is agreed by both [R.G.] and [M.D.] and [S.D.] that within three days of social security benefit payout monthly (the third week of each month) [R.G.] will place into a custodial account, with [C.D.] and her names on it, an amount equal to one-half of whatever the social security death benefit payout is. These funds are to be retained for [C.D.'s] future secondary education upon her graduation from high school. Should [C.D.] not attend a secondary educational facility the fund is still hers upon graduation from high school and achieving adulthood. The amount paid to this educational fund is to be the exact equivalent of one-half of whatever the monthly governmental payment is. The payment from [R.G.] to this fund is not to be construed as an attachment of social security death benefits but a dollar amount due regardless of the source of money. It is up

---

[1] The record suggests that the grandparents gained custody while R.G. was completing a jail sentence, but our record does not indicate whether or not any court proceedings were used to confirm the custody arrangement.

> to [R.G.] to decide where the funds for this monthly saving come from. . . .
> [R.G.] is to provide a bi-annual statement to [M.D. and C.D.] showing the
> account has been properly funded and the money retained. . . . This shall
> be provided in June and January annually. A simple bank statement will
> suffice.

Clerk's Papers (CP) at 5-6.

Sometime after she gained custody of C.D., the Social Security Administration began sending C.D.'s benefit payments to R.G. In July 2015, the grandparents filed a motion for an order to show cause for contempt, alleging that R.G. had not complied with the residential schedule by (1) failing to allow them visitation and (2) failing to open the educational fund. After holding a hearing, the court found that R.G. had failed in both respects and ruled that she was in contempt of court. To purge the contempt finding, she was told she could arrange make-up visitation for the grandparents and fund the trust account.

R.G. did not attempt to purge the financial rulings. Instead, she soon filed for bankruptcy and sought to discharge the funding obligation. The grandparents hired an attorney who objected to the request. The bankruptcy court later determined that the educational fund was a domestic support order and declined to discharge it.

A second contempt motion was filed in September 2016, alleging that R.G. was still not in compliance with the financial elements of the initial contempt ruling. The motion was heard by the same court commissioner who heard the earlier motion. R.G.

3

was again found in contempt for failing to fund the education account. The new contempt order included a judgment for $11,110 in past due educational funds and listed C.D. as the judgment creditor. R.G. was ordered to comply with the funding requirements within 30 days; doing so would purge the contempt order. R.G. moved for reconsideration by the commissioner and also sought revision of the ruling by a superior court judge. As part of the revision motion, she filed a motion to modify the parenting plan's provisions allowing grandparent visitation and requiring the educational fund.

The commissioner denied reconsideration and, four days later, a judge denied the revision motion. The judge expressly noted that the only issue before the court was the propriety of the contempt order since there had been no motion to modify presented to the commissioner. R.G. then timely appealed to this court. A panel considered the matter without argument.

## ANALYSIS

R.G. presents two issues for our consideration. First, she argues that the education funding provision violates her constitutionally protected right to parent C.D. and she, therefore, was not in contempt of court. She also argues that the trial court erred in declining to revise the commissioner's ruling. We address her issues in the order stated.

*Right to Parent*

R.G. argues that her constitutional right to parent means that the State cannot enforce the terms of the ARS against her wishes and she, therefore, was not in contempt. Such an approach would make residential schedules and many related orders totally illusory. It also would mean that a parent lacks authority to enter into contracts that other adults can enter into. For these and other reasons, we find her argument unpersuasive.

Parents have a fundamental liberty interest in the "care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000) (internal citations omitted). Parental rights are not absolute; children also are human beings and the State has a compelling interest in promoting and protecting the child's best interests, although only in extraordinary situations can the State deprive a parent of custody in favor of a nonparent. *In re Marriage of Allen*, 28 Wn. App. 637, 626 P.2d 16 (1981); a*ccord In re Custody of B.M.H.*, 179 Wn.2d 224, 235-236, 315 P.3d 470 (2013); *In re Custody of Shields*, 157 Wn.2d 126, 141-143, 136 P.3d 117 (2006).

Various aspects of marriage dissolution, financial support, and child custody are controlled by written orders entered by courts and must be entered on approved forms. *E.g.*, RCW 26.09.006, .050, .135; RCW 26.10.045. Many, if not most, of these orders are entered by agreement. *E.g.*, RCW 26.09.070. Contempt of court is the intentional disobedience of a lawful court order. *In re Marriage of Humphreys*, 79 Wn. App. 596,

5

599, 903 P.2d 1012 (1995). In the context of dissolution and parental support, contempt is governed by RCW 26.09.160.

RCW 26.09.160(1) provides in part:

An attempt by a parent . . . to refuse to perform the duties provided in the parenting plan . . . shall be deemed bad faith and shall be punished by the court by holding the party in contempt of court.

The party moving for contempt has the burden of proving contempt by a preponderance of the evidence by providing evidence that the offending party "acted in bad faith or engaged in intentional misconduct or that prior sanctions have not secured compliance with the plan." *In re Marriage of James*, 79 Wn. App. 436, 442, 903 P.2d 470 (1995). A contempt ruling must be supported by a finding that a violation of a court order was intentional. *Holiday v. City of Moses Lake*, 157 Wn. App. 347, 355, 236 P.3d 981 (2010).

Whether contempt is warranted in a particular case is within the sound discretion of the court. *In re Marriage of Thompson*, 97 Wn. App. 873, 877, 988 P.2d 499 (1999); *James*, 79 Wn. App. at 439-440. Discretion is abused where it is exercised on untenable grounds or for untenable reasons. *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997); *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). A trial court's challenged factual findings regarding contempt will be upheld on appeal if they are supported by substantial evidence. *In re Marriage of Rideout*, 150

6

Wn.2d 337, 350, 77 P.3d 1174 (2003).  Substantial evidence is that sufficient to persuade

a fair-minded, rational person of the truth of the evidence.  *Miller v. City of Tacoma*, 138

Wn.2d 318, 323, 979 P.2d 429 (1999).  Because it is the role of the trial court, not the

appellate court, to find facts, a reviewing court lacks the ability to weigh evidence and

will not review credibility determinations.  *Rideout*, 150 Wn.2d at 352; *Quinn v. Cherry

Lane Auto Plaza, Inc.*, 153 Wn. App. 710, 717, 225 P.3d 266 (2009); *In re Marriage of

Rich*, 80 Wn. App. 252, 259, 907 P.2d 1234 (1996).

R.G. argues that she did not give up her right to parent in the best interests of C.D.

when she signed the ARS, claiming that she remained a fit parent since there had been no

court determination to the contrary.  This argument makes little sense.  The agreement

does not find her to be an unfit parent or in any manner restrict her parenting rights.

Instead, the essence of her argument is that because she is the parent, her obligation to act

in the best interests of her child means that she can ignore provisions[2] of the ARS if she

wants to do so and the court cannot make her do otherwise without invading her

constitutional rights.  However, she points to no relevant authority allowing a parent to

trump a court order.

---

[2] Although not at issue in this appeal, the pleadings she filed in the trial court also express frustration with having to allow visitation to the grandparents, blaming visitation for disrupting C.D.'s life and limiting her outside activities.

If the question was whether the court could force her, over her objection, to save a particular amount of money each month for her daughter, there might be a different and closer issue presented. But that is not the case here. R.G. voluntarily[3] entered into the agreement to fund the educational account. She provides no authority that suggests a parent is not bound by her agreements. Our family law statutes provide otherwise. Parents are recognized as being capable of entering into agreements, within the parameter of the laws. If agreed upon provisions could not be enforced, parents would have less ability to enter into agreements than other adults since they would be incapable of making concessions related to their children. Any agreement by a parent touching on parental authority would also be illusory since it would not be binding on the parent.[4]

---

[3] In her trial court pleadings, R.G. indicates that she felt coerced into signing the agreement because the alternative was to go to trial and perhaps lose C.D. forever. Compromise is not coercion. R.G. had a weak case if the matter proceeded to trial. She had not parented C.D. and, in fact, had been largely absent from the child's life. That left her with little ability to prove that she was fit to parent and deserving of a custody award. She also apparently believed she had the ability to support the child without using of all of C.D.'s Social Security payment. Financial self-sufficiency is a positive factor in a parental fitness case and the inclusion of the educational funding clause likely helped the court agree to accept the plan. The clause also showed that R.G. was seeking to act in the best interests of C.D. and was not looking to the child to support her.

[4] R.G. does not explain how her theory would work out if the agreement was between two parents, neither of whom (presumably) was bound to follow any provision she or he did not like. If, for instance, the father wanted to have the children at Christmas, even though the mother was given that date, how would the mother make him return the children?

R.G. has not demonstrated that she lacked capacity to enter into the funding agreement. She also can point to no provision that gives her the ability to unilaterally disavow those portions of the ARS she does not want to follow. In essence, having gotten what she wanted out of the agreement, she now wants to disregard the rest of it. That is not how contracts work. The trial court had the authority to enforce the entire agreement, and could do so without infringing on her parental authority.

The commissioner's ruling on the contempt motion was, therefore, correct. R.G. had agreed to do something, but then from the very beginning refused to live up to the agreement. As soon as she became trustee for the Social Security payment, thereby triggering her obligation to fund the education account, she refused to do so with no explanation to the grandparents or the court. She then attempted to discharge the obligation in bankruptcy. Her entire course of action has been to attempt to avoid her responsibility under the agreement. The trial court understandably drew the conclusion that she was intentionally disobeying the ARS since she had never made the least effort to comply with the financial terms.

The record supports the determination that R.G.'s noncompliance was willful. The ruling finding R.G. in contempt is affirmed.

*Revision Ruling*

R.G. also takes issue with the revision ruling, arguing that the trial judge should have considered her motion to vacate paragraph 3.12.2 due to inability to afford the payment. While inability to pay would be relevant to her defense to the contempt action on the question of willfulness, a motion to eliminate the obligation going forward was not. The trial court did not abuse its discretion in declining to consider the evidence.

The trial judge hearing the revision motion considers a record that is circumscribed by statute. We recently described the revision hearing process:

> When a superior court judge receives a case through a motion for revision, the judge takes "jurisdiction of the entire case as heard before the commissioner." *State ex rel. Biddinger v. Griffiths*, 137 Wash. 448, 451, 242 P. 969 (1926). Although the superior court judge cannot accept new evidence, RCW 2.24.050, a motion on revision is in all other respects equal to any other matter on the court's docket. The judge reviews the law and evidence de novo. *State v. Ramer*, 151 Wn.2d 106, 113, 116-117, 86 P.3d 132 (2004) (de novo standard applied even when commissioner heard live testimony). Should the judge disagree with the commissioner's disposition, the judge may issue his or her own independent factual findings and legal conclusions. *Id.* at 113; *Iturribarria Perez v. Bazaldua Garcia*, 148 Wn. App. 131, 138, 198 P.3d 539 (2009); *Grieco v. Wilson*, 144 Wn. App. 865, 877, 184 P.3d 668 (2008), *aff'd in part sub nom. In re Custody of E.A.T.W.*, 168 Wn.2d 335, 227 P.3d 1284 (2010). Any subsequent appeal to this court is one that reviews the decision of the superior court judge, not the commissioner. *Ramer*, 151 Wn.2d at 113.

*Matter of Marriage of Lyle*, 199 Wn. App. 629, 632-633, 398 P.3d 1225 (2017).

The revision motion was held in accordance with this approach. The motion to revise asked that the superior court judge review the commissioner's contempt ruling and

overturn those portions of that ruling relating to financial conditions. CP at 99. The judge did so limit his review, noting that vacation of the funding provision was not before the court. Report of Proceedings at 27. More importantly, it was only the commissioner's ruling, and the evidence presented to the commissioner, that were properly before the judge at revision.[5] The motion for relief from the funding provision of the ARS was not before the commissioner or the revision judge.

R.G. had a proper vehicle for obtaining relief from the funding requirement—a motion to modify the provision of the ARS on the basis of change of circumstances. She has, at last, filed for that relief. CP at 73-79. She should have sought that relief up front rather than merely raise it as a defense to a contempt sanction. If she can establish her inability to pay, the court may well afford her either permanent or temporary relief. To do so, she will have to account for the support she is (or should be) receiving from the father of her new child and give a more detailed analysis of her financial situation than she has to this point.

Until that point is established to the satisfaction of the superior court, the funding obligation R.G. voluntarily undertook is valid and she properly was found in contempt of

---

[5] Since the case was before the commissioner on the grandparents' contempt motion, rather than some motion for relief filed by the mother, revision understandably had to be limited to that issue. Evidence of ability to pay was relevant to the willfulness issue in the contempt action, but it did not serve as the basis for relief from the provisions of the ARS.

No. 34994-2-III
*In re Custody of C.R.D.*

court for her willful failure to live up to that obligation. Should she prevail, she certainly may attempt to seek relief from the existing judgment. But until that happens, she properly was found in contempt of court. The superior court judge likewise properly limited his consideration on revision to the issues and evidence that had been before the commissioner.

The judgment is affirmed. The parties will bear their own costs, including attorney fees.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Pennell, J.

12